GRANDE AND SON, INC. *vs.* SCHOOL HOUSING COMMITTEE OF NORTH READING & others.

Middlesex.     May 10, 1956. — June 1, 1956.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Public Works. Contract,* For public works, Bidding for contract, Contract with municipality. *Municipal Corporations,* Contracts. *Certiorari. Practice, Civil,* Parties. *Moot Question.*

In a certiorari proceeding to quash the awarding of a building construction contract by a municipal committee as in violation of G. L. (Ter. Ed.) c. 149, §§ 44A–44C, as appearing in St. 1954, c. 645, it was improper to join the commissioner of labor and industries and members of the department of labor and industries as respondents for the purpose of requiring them to act under § 44E, inserted by § 4 of said c. 645.  [254]

An award of a contract for the construction of a school building subject to G. L. (Ter. Ed.) c. 149, §§ 44A–44C, as appearing in St. 1954, c. 645, by a town committee was in violation of the statute and invalid where it appeared that the lowest general bid included in its item 2 an improper subbid for acoustical ceilings based on material different from that called for by the specifications, that there were several proper subbids for the acoustical ceilings by subbidders of unquestioned responsibility and eligibility, and that the committee executed with the lowest general bidder a contract with the acoustical ceiling work eliminated and an "allowance" made therefor in the amount of such improper subbid; it was immaterial that, if the difference between the improper subbid and the lowest of the proper subbids had been added to the lowest general bid, it still would have been the lowest and that

the committee in so awarding the contract acted with a purpose to reduce the cost of the building to the town. [256–259]

The validity under G. L. (Ter. Ed.) c. 149, §§ 44A–44C, as appearing in St. 1954, c. 645, of an award of a contract for construction of a school building, not completed at the time of the decision by this court, had not become a moot question by reason of the expiration of the period after opening of bids specified in § 44B for awarding the contract. [259]

A municipal committee acted in a quasi judicial capacity in awarding a building construction contract subject to G. L. (Ter. Ed.) c. 149, §§ 44A–44C, as appearing in St. 1954, c. 645, and certiorari lay to quash an award of the contract made in violation of the statute. [259]

PETITION for a writ of certiorari, filed in the Superior Court on May 25, 1955.

The case was heard by *Warner, J.*

In this court the case was submitted on briefs.

*G. Joseph Tauro & Joseph Golant,* for the petitioner.

*Richard M. Sullivan,* for the respondent School Housing Committee of North Reading.

*George Fingold,* Attorney General, *& Arnold H. Salisbury,* Assistant Attorney General, for the department of labor and industries.

*Richard B. Dellheim,* by leave of court, submitted a brief as amicus curiae.

*Joseph M. Corwin & Sally A. Corwin,* by leave of court, submitted a brief as amici curiae.

WILKINS, J. This is a petition for a writ of certiorari to quash the action of the respondent school housing committee of the town of North Reading in awarding a contract for the construction of a Junior-Senior High School to L & R Construction of Medford, Inc. (hereinafter called L & R), as general contractor. The petitioner (hereinafter called Grande) was an unsuccessful general contract bidder, which contends that, had proper action been taken, it would have been selected as the "lowest responsible and eligible bidder for the complete work." G. L. (Ter. Ed.) c. 149, § 44A, as appearing in St. 1954, c. 645, § 1. The respondent committee filed a return. In the Superior Court a final judgment was entered dismissing the petition, and the pe-

titioner appealed. G. L. (Ter. Ed.) c. 213, § 1D, inserted by St. 1943, c. 374, § 4.

The commissioner of labor and industries and the members of the department of labor and industries of the Commonwealth should not have been made parties respondent.[1] The only proper respondents to a petition for a writ of certiorari are the members of the tribunal whose action is to be examined. *Marcus* v. *Commissioner of Public Safety,* 255 Mass. 5, 8. *Marshall* v. *Registrar of Motor Vehicles,* 324 Mass. 468, 469. *Massachusetts Feather Co.* v. *Aldermen of Chelsea,* 331 Mass. 527, 528–529.

The sole question presented to the court below was whether G. L. (Ter. Ed.) c. 149, § 44C (A) cl. 1, as appearing in St. 1954, c. 645, § 3, because of the Connor subbid, hereinafter referred to, made it mandatory upon the respondent committee to reject the bid of L & R. The case presents issues under the statutes regulating the award of contracts for public building projects by competitive bidding. The provisions of § 44C (A) cl. 1 are: "Bids from general contractors shall be *for the complete work as specified* [emphasis supplied] and shall include the names of subcontractors and the amounts of their bids as designated in item two of the bid form and the general contractor shall be selected on the basis of such bid. Bids from general contractors must be submitted on the bid form for general contractors as set forth in (G) of this section [§ 44C (G)]. Bid forms shall be completely filled in. Bids which are incomplete, conditional or obscure, or which contain additions not called for, shall be rejected."

These are the facts giving rise to the dispute. The town, represented by the respondent committee, invited sealed bids to be submitted in accordance with specifications for the school building, which is a project subject to G. L.

---

[1] It was sought to require them to act under G. L. (Ter. Ed.) c. 149, § 44E, inserted by St. 1954, c. 645, § 4, which reads: "The department shall enforce sections forty-four A to forty-four D, inclusive, and shall have all necessary powers to require compliance therewith, including proceedings in the superior court to restrain the awarding and performance of all contracts covered by said sections."

(Ter. Ed.) c. 149, §§ 44A–44C, as appearing in St. 1954, c. 645, §§ 1–3, § 44D, inserted by St. 1939, c. 480, and § 44E, inserted by St. 1954, c. 645, § 4. Bids of general contractors were to be submitted to the respondent committee at the town hall not later than 8 P.M. on April 22, 1955, at which time all bids were to be opened. Bids of subcontractors, including those for work on acoustical tile ceilings, were to be submitted two days earlier. The bid form for general contractors called for bids in two items, item 1 to be the work of the general contractor, and item 2 to consist of the subbids, in this instance twenty-three in number. This was required by G. L. (Ter. Ed.) c. 149, § 44C (A) cl. 2, as appearing in St. 1954, c. 645, § 3.

When the bids of the general contractors were publicly opened and read, the two lowest were as follows:

|        | *Item 1*      | *Item 2*      | *Item 3*     |
|--------|---------------|---------------|--------------|
| Grande | $680,702.50   | $873,297.50   | $1,554,000   |
| L & R  | 686,514.30    | 855,373.70    | 1,541,888    |

Grande, accordingly, was low on item 1, but L & R was low on item 2 and on the total bid.

In item 2 under the subbid for acoustical tile ceilings Grande listed Acoustical Contractors, Inc., as the bidder and $26,656 as the amount, and L & R listed Frederick A. Connor as the bidder and $18,000 as the amount. When the respondent committee opened the subbids, they discovered that the Connor subbid was based, not upon the specified acoustical tile ceilings, but upon acoustical plastic mechanically applied. L & R already knew, or should have known of the contents of the Connor subbid, which carried the statement authorized by § 44C (B) that it was being sent to all general bidders except one, not L & R. For subbid form see § 44C (H). While not a fact essential to our decision, the observation is material that making an intelligent general bid involves knowledge of the contents of the subbids listed in it. It may be noted that there is no contractual relation between the awarding authority and a subbidder. *East Side Construction Co. Inc.* v. *Adams*, 329

Mass. 347, 353.   *M. Ahern Co.* v. *John Bowen Co. Inc.* *ante*, 36, 41.

The bid of Acoustical Contractors, Inc., was the lowest of four proper subbids for acoustical tile ceilings, all by subbidders whose responsibility and eligibility were not questioned by the respondent committee.   Likewise the responsibility and eligibility of Grande as a general contractor were not so questioned.

On May 20, 1955, the respondent committee and L & R signed a contract for construction of the school building. The contract price was $1,544,298.80; item 1 was $686,514.30; and item 2 was $857,784.50.[1]   Under the work covered by four subbids appeared the word "allowance": acoustical tile ceilings $18,000; stage curtains and lighting $6,200; bleachers $7,242; and household arts equipment $13,992.   In view of the fact that the one question raised in the court below concerned the Connor subbid, the only so called allowance we shall consider is that relating to acoustical tile ceilings.

It is manifest that the original bid of L & R was not "for the complete work as specified" and was not a compliance with the statute.   In substance, there is no difference between a subbid changed by the general contractor, as in *Gifford* v. *Commissioner of Public Health*, 328 Mass. 608, or the failure to include a subbid, as in *East Side Construction Co. Inc.* v. *Adams*, 329 Mass. 347, and the facts confronting us, where one of the subbids utterly failed to comply with the specifications.   This, indeed, was the opinion of the commissioner of labor and industries, whose advice had been sought, which he gave in a letter dated May 3, 1955, to the town counsel who represented the respondent committee.   There is nothing in *Capuano, Inc.* v. *School Building Committee of Wilbraham*, 330 Mass. 494, which aids the respondent committee.   We are dealing with a case of "illegal" action and not with "conclusions as to matters of fact within their jurisdiction" (page 496).

---

[1] An increase of about $2,410 over L & R's original total for item 2 was due to changes in two subcontractors.

In justification of the award of the contract to L & R on a new basis not in accordance with the specifications, several arguments have been advanced. One is that pursuant to c. 149, § 44C (D), as appearing in St. 1954, c. 645, § 3,[1] the respondent committee determined that the difference between the two acoustical bids was $8,656 and that by adding this amount to the bid of L & R the adjusted contract amount of L & R would have been $1,550,544 and lower than Grande by $3,456. But § 44C (D) applies only "after the selection of the general contractor" and only if "it be decided to consider subcontractors other than the ones named by the general contractor in his bid." A procedure is set up by which in that event the awarding authority and the selected general contractor shall jointly consider the names and amounts of all subbidders and may substitute other subbidders. That procedure was not followed by the respondent committee. No new subbidder was substituted. Instead, the provision for acoustical tile ceilings was struck from the contract.

In support of their action the respondent committee refer us to c. 149, § 44A, which provides: "Every contract . . . shall be awarded on the basis of competitive bids to the lowest responsible and eligible bidder for the complete work. . . . The awarding authority shall reserve the right to reject any or all bids, if it be in the public interest so to do." There are several answers to this contention. In the first place, "the right to reject any or all bids" appears to

---

[1] "If after the selection of the general contractor, it be decided to consider subcontractors other than the ones named by the general contractor in his bid, the awarding authority and the selected general contractor shall jointly consider the names of all sub-bidders and their amounts, as filed. Any agreement to substitute the name of a subcontractor other than the one named in the general contractor's bid shall cause an adjustment of contract price at the net difference in accordance with the sub-bidders of record filed with the awarding authority. If by such substitutions the total adjusted bid of the general contractor first selected becomes greater than the original total bid of the next to lowest eligible and responsible bidder, then the latter shall be selected and his sub-bidder similarly considered. . . . The general contractor finally selected by the aforementioned process of substitutions shall become the lowest responsible and eligible bidder. All subcontractors when finally selected shall be notified in writing of their selection within forty-eight hours thereafter by the general contractor."

258    334 Mass. 252

Grande & Son, Inc. *v.* School Housing Committee of North Reading.

refer to general bids only. Section 44C (E)[1] expressly limits the power of the awarding authority to reject all subbids on an item of work to cases where none of the subbids is by a competent person or where a single subbid was received in an amount not reasonable to accept without competition. But if we assume for the purpose of argument that "the right to reject any or all bids" includes subbids, there still would be no authority to accept an incomplete general bid. The provision for rejecting bids is not intended as a device to be adopted as part of the act of awarding a contract so as to justify making a contract different from that submitted to competitive bidding. If, after bids are opened, the awarding authority could, either with or without negotiation with a selected general contractor, omit portions of the proposed work for reductions in price, the legislative intent to protect the public, all too easily, could be evaded. That the awarding authority, as contended here, had as one of their purposes a reduction in cost is of no consequence. *Gifford* v. *Commissioner of Public Health*, 328 Mass. 608, 617. *East Side Construction Co. Inc.* v. *Adams*, 329 Mass. 347, 352–353. Even the best of motives cannot excuse contravention of the statute.

L & R, in its brief as amicus curiae, states that "inasmuch as the statute expressly provides that an awarding authority shall have the absolute right to treat any item as an allowance, such action puts all bidders on an equal footing by such rejection." The only statutory reference to allowances is in § 44C (C)[2] relating to the case where no

---

[1] "The awarding authority shall reserve the right to reject all sub-bids on any item or items, if it is determined that none of such bids represents the bid of a person or firm competent to perform the work as specified, or that only one such bid was received and that the price is not reasonable for acceptance without competition. If a rejection of a sub-bid occurs, new bids shall be requested on such item or items as may have been rejected, which shall in no way affect the other sub-bidders who have conformed to the prescribed bidding procedure. Such new bids shall be obtained by written invitation to three or more qualified sub-bidders and shall be publicly opened at a time and place to be specified in the invitation for bids."

[2] "If no bids for a class of work listed in item two of the bid form are filed with the awarding authority, the awarding authority shall state, in an addendum to be issued with the listing of recorded sub-bids issued to bidders, an amount or amounts to be included by the bidder under item two of the bid

subbids have been filed for a class of work to be done by subcontractors. Obviously, this provision has no present application. Nor, if material, are all bidders placed on an equal footing when the selected general contractor is awarded without competitive bidding a contract to do less than all the work at a reduced amount.

The respondent committee suggest that the proceedings are moot. The building, however, is not completed, and, according to affidavits submitted, will not be completed before October 1, 1956. It is said that any judgment in favor of Grande would be academic. Reference is made to § 44B, as appearing in St. 1954, c. 645, § 2, which, in part, provides that award of any contract must be within thirty days of opening the bids. This does not have the result that an illegal award of a contract becomes immune from attack in that length of time. It is the function of a writ of certiorari upon a proper and adequate return to correct substantive errors of law by a judicial or quasi judicial tribunal which are not otherwise reviewable by a court. *Gifford* v. *Commissioner of Public Health*, 328 Mass. 608, 619. The respondent committee, on the authority of the case last cited, were acting in a quasi judicial capacity. There was error of law in their award of the contract.

The final judgment is reversed, and a new final judgment is to be entered dismissing the petition as to the respondents commissioner of labor and industries and the members of the department of labor and industries of the Commonwealth, and quashing the proceedings of the respondent school housing committee and the purported contract awarded by that committee.

*So ordered.*

---

form for the class or classes of work for which no bids have been received. The general contractor shall cause the work so covered to be done by such subcontractors and for such sums as may be agreed upon with the awarding authority, the contract price being adjusted by the difference between such sums and the amounts stated in the addendum. The bidder shall include under item one all expenses and profits on account of such allowances. The general contractor shall not be required to employ for any such work subcontractors against whose standing and ability the general contractor makes objection."