ALBERT R. LORANGER & others *vs.* MARTHA'S VINEYARD REGIONAL HIGH SCHOOL DISTRICT SCHOOL COMMITTEE.

Bristol. November 5, 1958. — January 23, 1959.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Public Works. Contract,* For public works, Bidding for contract. *Certiorari. Practice, Civil,* Appeal.

An order for preparation of the necessary papers on an appeal duly taken from the dismissal of a petition for a writ of certiorari was properly given within G. L. c. 231, § 135, although filed with the clerk before the case became "ripe for final preparation and printing of the record." [452]

A certiorari proceeding is to be decided on the basis of the facts appearing in the respondent's return except that facts outside it bearing on the respondent's jurisdiction or on discretionary denial of the writ may also be considered. [453]

An award of a general contract for the construction of a building subject to G. L. c. 149, §§ 44A–44L, as appearing in St. 1956, c. 679, § 1, was not in violation of the statute or invalid by reason of the facts that the awarding authority, after opening the general bids and voting to reject an alternate item included in the general specifications, later reversed its decision and accepted that item and awarded the contract to a general bidder whose bid was the lowest whether that item was

338 Mass. 450                                                451

Loranger *v.* Martha's Vineyard Regional High School District School Com.

accepted or rejected, and that some of the work "called for in the alternates and deleted from the general contract was to be performed in the future, but not under the general contract." [453–454]

A finding merely that subbids for construction of a regional district school building were received and opened by the architect for the district at his office at a time when only one member of the committee constituting the awarding authority was present did not warrant an inference that the requirement of G. L. c. 149, § 44H, as appearing in St. 1956, c. 679, § 1, that subbids "shall be publicly opened and read by the awarding authority," had not been met. [455]

In view of the provisions of G. L. c. 149, § 44H, as appearing in St. 1956, c. 679, § 1, the unsuccessful second lowest general bidder for construction of a public building had no interest entitling him to litigate, in a certiorari proceeding to quash an award of the general contract to the lowest general bidder, the validity of a subbid protested by a competitor of the subbidder but contained in the list of subbids submitted by the awarding authority to the general bidders and used by both the petitioner and the successful general bidder in their respective bids. [455–456]

A subbid for public construction work subject to G. L. c. 149, §§ 44A–44L, as appearing in St. 1956, c. 679, § 1, was not invalid by reason of an inconsequential misdescription of the payee in the bid deposit check accompanying the subbid, or of insertion of merely a dash after alternate items in the subbid form which did not concern the subject of the subbid, or of deletion of the word "Deduct" before a sum quoted on an alternate item and substitution of the word "Add," or of failure of a listed sub-subbidder to include certain work which the subbider might choose to do itself. [456]

The unsuccessful second lowest general bidder for public construction work subject to G. L. c. 149, §§ 44A–44L, as appearing in St. 1956, c. 679, § 1, had no interest entitling it, in a certiorari proceeding to quash an award of the general contract to the lowest general bidder, to litigate the validity of certain subbids where there was no reason for concluding that there were not sufficient subbids to permit the contract to be awarded on the basis of the existing bids or that, if new subbids had been required, the petitioner could have become the lowest general bidder. [457]

Where, in a certiorari proceeding brought by the unsuccessful second lowest general bidder for construction of a public building subject to G. L. c. 149, §§ 44A–44L, as appearing in St. 1956, c. 679, § 1, to quash an award of the general contract to the lowest general bidder, it did not appear that the result of the bidding was affected or injury caused to the petitioner by any failure of the awarding authority to carry out the direction contained in § 44H to reject subbids not conforming to the statute, dismissal of the certiorari petition notwithstanding any such failure was within the sound discretion of the judge. [458–459]

The unsuccessful second lowest general bidder for construction of a regional district school building subject to G. L. c. 149, §§ 44A–44L, as appearing in St. 1956, c. 679, § 1, had no standing, in a certiorari pro-

452                                        338 Mass. 450

Loranger *v.* Martha's Vineyard Regional High School District School Com.

ceeding to quash an award of the general contract to the lowest general bidder, to litigate the possible invalidity of that contract on the ground that it would commit the district to expenditures in excess of the appropriation authorized or would cause the district to exceed its debt limit. [459]

PETITION for a writ of certiorari, filed in the Superior Court on January 7, 1958.

The case was heard on an auditor's report by *Warner, J.*

*Charles R. Desmarais, (Gerald P. Walsh* with him,) for the petitioners.

*Arthur W. Davis,* for the respondents.

*James P. McGuire & Joseph M. Corwin,* by leave of court, submitted a brief as amici curiae.

WHITTEMORE, J.    This petition for a writ of certiorari seeks to quash the action of the respondents as the regional district school committee (the committee) of the Martha's Vineyard Regional High School District (the district) in awarding to Ayers-Hagan-Booth, Inc. (Ayers), a general contract for the construction of a regional public high school building at Oak Bluffs.    The petitioners (Loranger) and Ayers were the two low bidders for the general contract. The case was heard in the Superior Court on an auditor's report.    The judge ordered the petition dismissed and the petitioners have appealed.    (G. L. c. 213, § 1D, as amended by St. 1957, c. 155.)

1. The motion of the respondents to dismiss the appeal is denied.    The respondents filed their counter designation of the record on appeal on April 4, 1958, and on that day, and again on April 11, the petitioners filed an order for preparation of the necessary papers.    The judge's approval of the counter designation was docketed on May 2, 1958. There was substantive compliance with G. L. c. 231, § 135, which requires that the party having the obligation "give" the order to the clerk "within ten days after the case becomes ripe for final preparation and printing of the record." The order on file spoke operatively at the time specified in the statute.    It is inconsequential that it was filed prior to the ten day period. *Reardon* v. *Cummings,* 197 Mass. 128,

338 Mass. 450                                                    453

Loranger *v.* Martha's Vineyard Regional High School District School Com.

129. *Trustees of Thayer Academy* v. *Assessors of Braintree,* 232 Mass. 402, 406. Cases cited in *Sherrer* v. *Sherrer,* 320 Mass. 351, 354. *McDermott* v. *Jamula, ante,* 236, 240–241.

2. The auditor incorporated in his report the return of the respondents and made findings of fact which are in large part statements of relevant facts disclosed in the return. The issue is to be decided upon the face of the return except that the respondents may be permitted to show facts outside the record which might lead to refusal of the writ on discretionary grounds, and the petitioners may introduce evidence controverting such evidence, and may, with evidence, attack the jurisdiction of the inferior tribunal. *Morrissey* v. *State Ballot Law Commn.* 312 Mass. 121, 124–125. *Boston* v. *White Fuel Corp.* 294 Mass. 258, 261, and cases cited. *Haven* v. *County Commrs. of Essex,* 155 Mass. 467, 469. *Bradley* v. *Board of Zoning Adjustment of Boston,* 255 Mass. 160, 171. *Selectmen of Wakefield* v. *Judge of First Dist. Court of E. Middlesex,* 262 Mass. 477, 481. *Gifford* v. *Commissioner of Pub. Health,* 328 Mass. 608, 619. The few findings which may not be statements of what is shown by the return are not important to the case as we view it. In any event they must be disregarded except as relevant to the discretionary denial of the writ.

3. No illegality is shown to have occurred in accepting and rejecting certain alternative proposals of the specifications and determining that Ayers was the low bidder.

Ayers's bid of $1,063,031 was next to the lowest and Loranger's bid, $1,056,811, was the lowest, when the bids were opened. The general specifications, however, as contemplated by G. L. c. 149, §§ 44F, 44G, contained sixteen alternate items, and required the bidders to state in each alternate the amount which would be added to or deducted from their bids in the event that the awarding authority (the committee) should wish to adopt such alternate.

The committee voted on all the alternate items on November 22, 1957, and on that day voted to reject alternate No. 15. The effect of this, with the other acceptances and rejections of alternates, was to make the Ayers bid $1,030,869, and the

454                                                      338 Mass. 450

Loranger v. Martha's Vineyard Regional High School District School Com.

Loranger bid $1,031,140. The committee thereupon voted to "tentatively select" Ayers as "the apparent low bidder." On December 5, the committee voted to sign a contract with Ayers for $1,022,001, their counsel having reported that all the contract documents were in order. The contract lists alternate No. 15 among the alternates which were accepted. This shows that the committee had reversed their decision of November 22 in respect of this item. The amounts which had been specified to be deducted if alternate No. 15 was accepted were Loranger $8,648 and Ayers $8,868. Thus Loranger's bid, adjusted to the decision evidenced by the vote and contract of December 5, became $1,022,492 ($1,031,140 — $8,648) while Ayers's adjusted bid became the contract figure of $1,022,001 ($1,030,869 — $8,868) and Ayers's bid remained the lowest by a larger spread. Nothing in the statute or bidding documents puts the decision of November 22 as to alternate items beyond change, and in any event Loranger cannot complain, for their bid was the higher whether or not alternate No. 15 was accepted.

On November 22, the architect informed the committee that although the bids were all above the original budget estimates there were a number of alternatives available. The minutes state, "The careful selection of alternates . . . was considered with more favor by the members than the prospect of eliminating the music area or two classrooms." The minutes of a meeting held on November 25 state that "[t]he architects were questioned closely on the matter of the committee's right to make changes in the building after the contract has been signed. Article 15. Changes in the work contained in the general conditions . . . was read and discussed by the committee." The auditor found, and the return supports the finding, that "[s]ome of the work called for in the alternates and deleted from the general contract was to be performed in the future, but not under the general contract." There is no basis in these facts for a finding of an intent to evade the provisions of G. L. c. 149, §§ 44A–44L, or that any evasion or illegality would result.

4. The petitioners may not demand the issuance of the writ because of the action taken in respect of subbids.

(a) Section 44H requires that the subbids "shall be publicly opened and read by the awarding authority." The auditor found that the subbids were received and opened by the architectural firm of Perley F. Gilbert Associates, Inc. (Gilbert), on November 8, 1957, at its office located in Lowell, at which time a Mr. Hall, a member of the committee, was present. There is no basis for inferring that the requirement of § 44H was not met. The contract documents show that Gilbert was the architect for the district. It was appropriate that the architect perform this ministerial duty for its principal. An inference is warranted that the action taken on November 8 was done in public. There is no suggestion to the contrary.

(b) It does not appear that the petitioners have an interest to contest the award of the subcontract for heating and ventilating to Brandt-Jordan Corporation (Jordan), the low bidder.

The list of subbids submitted by the architect for the district to the prospective general bidders (G. L. c. 149, § 44H) noted a protest by a competitive subbidder against the Jordan bid. This bid was, however, used by both Loranger and Ayers. The return shows that the architect for the committee investigated the matters complained of in the protest, and consulted about them with the department of labor and industries after the signing of the contract with Ayers. That there was reasonable basis in the resulting reports made to the committee, as shown in the return, for concluding that the Jordan bid was valid, as we think there was, does not bar a determination that the bid based on all facts shown in the return was invalid. But the determination of the invalidity of the Jordan bid would not invalidate the general bid. After our decision in *Grande & Son, Inc.* v. *School Housing Comm. of No. Reading,* 334 Mass. 252, the General Court amended the entire statutory bidding procedure. Section 44H of c. 149, as appearing in St. 1956, c. 679, § 1, now provides that "If a general bidder not

named in said list as expressly precluded from doing so names as a sub-bidder for a sub-trade in Item 2 of the general bid form a person included for such sub-trade in said list at the sub-bid price stated in said list, the general bid of such general bidder shall not be invalid or rejected because of the invalidity of such sub-bid or because of error in said list; but there shall be substitution of sub-bidders and adjustment of contract price as if paragraph (3) of section forty-four I were applicable." In the circumstances we hold that Loranger has no interest to litigate the validity of the Jordan bid.[1] But it may be noted, nevertheless, that the return does not show illegality in the use of this subbid. The bid itself appears to be complete and in order. The competitor protested that the payee in the bid security check was incorrectly described. The instructions to bidders specified as payee "Martha's Vineyard Regional School District." The check was payable to "Martha's Vineyard Regional High School Building Committee." The correct name was "Martha's Vineyard Regional High School District." The committee was not obliged to reject the bid because of the inconsequential variance. The protest that Jordan merely put a dash after those alternate items in the subbid forms which did not concern the heating and ventilating contractors was frivolous. There was plainly no basis for the claim that the bid on alternate No. 16 was obscure or nonconforming. This was apparently based on the deletion in ink of the word, "Deduct," written in ink, and the substitution of the word, "Add." The intent was obvious. The protest asserted that one of the sub-subbidders listed by Jordan did not include sound insulation. But this raised a question of whether Jordan might if it chose do this work itself. We think the return does not show that it might not, and it does show a basis for a conclusion to the contrary and in support

---

[1] The record discloses that there was also referred to the auditor and heard concurrently by the same judge a petition for a writ of certiorari brought in Plymouth County by the protesting subbidders for the heating and ventilating work and a sub-subbidder for a part of that work. The brief of Ayers states that that petition was dismissed in an order of the Superior Court dated March 14, 1958, and no appeal was taken.

of the bid. In no other respect does the return show illegality in the Jordan bid.

(c) The petitioners have no interest in possible deficiencies in other subbids. With one exception the general bids of Loranger and Ayers incorporated the same subbids. Each used the lowest subbid which was not restricted against use by that firm,[1] except that Ayers used the second from the lowest subbid for the resilient tile work. The auditor stated facts, shown by the return, which are the basis of the petitioners' contention that the bids of three of the six subbidders for heating and ventilating work, in addition to that of Jordan, were defective, and that three subbids for other work were defective. We need not consider whether these possible defects significantly affected the validity of the bids. There is no basis for concluding that there were not sufficient subbids for heating and ventilating or the other subcontracted work to permit the final contract to be made on the basis of the existing bids, or that, in any event, if new subbids had been required Loranger would have had an opportunity to become the low bidder on the general work. See G. L. c. 149, § 44I.[2] We do not propose to rule on the validity of the subbids of contractors who were not selected by either Loranger or Ayers and who have not asserted that they have been injured.

---

[1] Provision C of the subbid form prescribed by G. L. c. 149, § 44G, reads: "This sub-bid may be used by any general bidders, except . . . ."

[2] "Section 44I. (1) If no sub-bid is filed for a sub-trade designated in Item 2 of the general bid form or if a rejection of all sub-bids for such a subtrade occurs pursuant to section forty-four D or section forty-four H, the awarding authority shall state, in an addendum issued with the list of subbidders required by section forty-four H, the amount to be included by a general bidder under Item 2 of the general bid form for such sub-trade; and without in any way affecting other sub-bidders who have conformed to the prescribed bidding procedure, new sub-bids for such sub-trade shall be requested forthwith by written invitation to three or more qualified sub-bidders and shall be publicly opened and read by the awarding authority at a time and place to be specified in such invitation. The general contractor shall cause the work covered by such sub-trade to be done by the lowest responsible and eligible sub-bidder against whose standing and ability the general contractor makes no objection or, if there is no such sub-bidder, by such sub-contractor against whose standing and ability the general contractor makes no objection and for such sum as the general contractor and the awarding authority may agree upon; and the contract price shall be adjusted by the difference between the sub-contract sum and the amount stated in the addendum. The general bidder shall include under Item 1 of the general bid form all expenses and profits on account of such adjustments."

(d)  Loranger may not attack the failure of the committee to reject any subbids before accepting general bids.

Section 44H provides that the awarding authority within two days after the opening of the subbids "shall reject every sub-bid which is not accompanied by a bid deposit . . . or which otherwise does not conform with sections forty-four A to forty-four L, inclusive, or which is on a form not completely filled in, or which is incomplete, conditional or obscure, or which contains any addition not called for."  It also provides in substance that the awarding authority is to mail to prospective general bidders a list of the subbidders "not rejected by the awarding authority" with name, address and subbid price.

The authority did not act to reject any subbid.  The architect sent to the prospective general bidders a list of all subbidders, which contained the required information about each and remarks about some which appear to indicate the respects in which the bid did not conform to instructions.  For example, as to one subbid "Incomplete bid pages 2 thru 6 omitted.  No addendum mentioned."  Remarks against other subbid listings may show or refer to deficiencies which might have justified, although not necessarily have required, rejection.  Two protests by other subbidders were noted.

We do not find it necessary to determine whether there is a basis for the contention of Ayers, in its brief as amicus curiae, that the direction to reject nonconforming subbids is not mandatory but only directory.[1]  Nor do we come to a determination of the result of a failure to reject, with consequent effect on the determination of the "lowest responsible and eligible general bidder," or on the rights of any subbidders, or any hurt to the public interest which the statute impliedly recognizes.

If we assume that the awarding authority should have rejected one or more bids, there is nevertheless no showing

[1] Ayers points to the risks and complications involved in a determination, which in a suit by an aggrieved subbidder might be later held to be legally unfounded, that a subbid did not conform, with the result that such subbid would not be available to general bidders.

that the result would not have been the same in all respects as to the general contractor and all subcontractors.

"It is familiar law that a petition for a writ of certiorari is addressed to the sound discretion of the court. It does not issue as of right. It is not granted on account of formal or insubstantial errors. It must appear that manifest injustice has been done to the petitioner." *Byfield* v. *Newton,* 247 Mass. 46, 58. *Colantuoni* v. *Selectmen of Belmont,* 326 Mass. 778, 779, and cases cited. *Mitchell* v. *Civil Serv. Commn.* 335 Mass. 509, 510. Compare *North Shore Corp.* v. *Selectmen of Topsfield,* 322 Mass. 413, 418. Whatever the right of taxpayers, and we intend no suggestion, it was in the circumstances plainly within sound discretion not to issue the writ because of failure to reject subbids, on the petition of an unsuccessful general bidder who does not show that he has been hurt. Compare *Gifford* v. *Commissioner of Pub. Health,* 328 Mass. 608; *East Side Constr. Co. Inc.* v. *Adams,* 329 Mass. 347; *Grande & Son, Inc.* v. *School Housing Comm. of No. Reading,* 334 Mass. 252; *Poorvu Constr. Co. Inc.* v. *Nelson Elec. Co. Inc.* 335 Mass. 545.

5. Loranger has no standing to litigate the possible invalidity of the contract between the district and Ayers, on the ground that it would cause the total commitments of the district to exceed the appropriation or an applicable debt limit. G. L. c. 40, § 53. *Finlay* v. *Boston,* 196 Mass. 267. *Dube* v. *Mayor of Fall River,* 308 Mass. 12, 14. *Hurley* v. *Lynn,* 309 Mass. 138, 141. See, for statutes applicable to the district, G. L. c. 44, § 28A; c. 71, § 16 (d), as appearing in St. 1956, c. 243. Compare c. 44, § 31. See also St. 1948, c. 645, § 6, as appearing in St. 1954, c. 346.

6. We have considered all the petitioners' points and conclude that the order for the dismissal of the petition should be affirmed.                *So ordered.*