John D. Ahern Co. Inc. *v.* Acton-Boxborough Regional School District.

JOHN D. AHERN CO., INC. *vs.* ACTON-BOXBOROUGH
REGIONAL SCHOOL DISTRICT.

Middlesex.    December 10, 1959. — February 5, 1960.

Present: WILKINS, C.J., SPALDING, COUNIHAN, WHITTEMORE, &
CUTTER, JJ.

*Public Works.    Contract,* For public works, Bidding for contract.

There was no merit in a contention, made by a successful subbidder on a
public construction project subject to G. L. c. 149, §§ 44A et seq.,
as amended through St. 1954, c. 645, after he had sought to withdraw
his subbid for alleged mistake in its amount and, by refusing to execute
a subcontract, had brought about an increase in the cost of the project,
that certain trivial irregularities in his subbid had rendered its rejection
by the awarding authority mandatory and that he accordingly was
entitled to return of the bid deposit furnished by him pursuant to
§ 44B.    [357–358]

A successful subbidder on a public construction project subject to G. L.
c. 149, §§ 44A et seq., as amended through St. 1954, c. 645, who had
sought to withdraw his subbid for alleged mistake in its amount and,
by refusing to execute a subcontract with the successful general bidder,
had brought about an increase in the cost of the project, had in the
circumstances no standing subsequently to make a belated assertion
that alleged impropriety in the awarding authority's procedure with
respect to the subbidding on a subtrade other than his rendered the
general contract invalid and entitled him to return of the bid deposit
furnished by him under § 44B.    [358–359]

CONTRACT.    Writ in the Superior Court dated October 29,
1957.

The action was heard by *Macaulay, J.*

*Jerome A. McCusker,* for the plaintiff.

*Lane McGovern,* for the defendant.

CUTTER, J.    The plaintiff (Ahern) seeks to recover a
$1,000 bid deposit furnished with a subbid made in 1955
in connection with the construction of a school for the de-
fendant (the school district).    The case was heard in the
Superior Court on a statement of agreed facts.    The trial
judge made a general finding for the school district, in effect

an order for judgment. See *Thurlow* v. *Crossman*, 336 Mass. 248, 250. Ahern has appealed.

In August, 1955, the school district advertised for bids, specifying that subbids would be taken on certain parts of the work including (a) painting and (b) heating and ventilating. Each subbidder on painting was required to furnish $1,000 bid security. See G. L. c. 149, § 44B (as amended through St. 1954, c. 645, § 2).[1] Ahern mailed a subbid of $11,413 for the painting to the school district with a certified check for $1,000, and also sent its subbid to J. F. Rand & Son (Rand), a general contractor, and to two other firms which were bidding on the project. It was agreed that the "*testimony* [emphasis supplied] of . . . [the] president of . . . [Ahern] is that . . . [the] subbid submitted to . . . Rand . . . was . . . $11,415 . . . by . . . mistake . . . $2 higher than the figure . . . submitted to the other general contractors and . . . than the figure in the record copy of the . . . subbid filed with the" school district.

General bids were seasonably received on or prior to September 14, 1955, from six general contractors. Rand was the low bidder, at $1,170,383. The next lowest bid was $1,223,000. Each of these bidders had included Ahern as subcontractor for painting, Rand at a figure of $11,415 and two others at a figure of $11,413.

On September 15, 1955, the architect received a letter from Ahern stating that it "would like to withdraw . . . [its] bid" because it had discovered an error in its quoted figure amounting to "many thousands of dollars." On October 11, 1955, the school district accepted Ahern's painting subbid

[1] Section 44B, as thus amended, reads in part: "Every bid submitted by . . . subcontractors . . . for any work referred to in section forty-four A shall be accompanied by . . . a certified check on . . . a responsible bank . . . payable to the . . . district . . . in the name of which the contract for the work is to be done. . . . If a bidder on any item of work designated in item two fails to execute a contract with the selected general contractor, contingent upon the final execution of the general contract, within five days . . . after presentation thereof by the general contractor the amount so received as bid deposit from the bidder through his . . . certified check . . . shall become and be the property of the said . . . district . . . as liquidated damages . . . ." See for general discussion of bid deposits *Wheaton Bldg. & Lumber Co.* v. *Boston*, 204 Mass. 218, 222, 226, and *Daddario* v. *Milford*, 296 Mass. 92, 96. See also Corbin, Contracts, §§ 599, 609, 1074.

and executed a general contract with Rand, which included an allowance of $122,000 for heating and ventilating. The school district did not accept any subbid for the heating and ventilating. It had received too late a subbid of $121,090 for this work from J. J. Hurley & Co., Inc. (Hurley), and decided "to rebid the heating and ventilating work at a later date" despite the fact that the subbidders who seasonably filed subbids for this work "were responsible, competent, and eligible." All "six general contractors bidding . . . [had] selected . . . Hurley . . . as subcontractor for heating and ventilating."

Ahern, when notified that its painting subbid had been accepted, refused to execute a subcontract with Rand. The work was then awarded to the next lowest painting subbidder at an additional cost to the school district of $1,337. On November 7, 1955, Ahern requested that its bid deposit be returned. The school district refused to do this because of Ahern's failure to execute a subcontract.

On November 29, 1955, new heating and ventilating subbids were opened and the school district, by a change order approved March 20, 1956, requested Rand to enter into a subcontract with the low subbidder. Classes opened in the school in September, 1957. After this action was entered on December 2, 1957, Ahern for the first time stated as a ground for the return of its bid deposit "alleged deficiencies with respect to the nonacceptance of heating and ventilating subbids in October, 1955."

1. Ahern contends that there were two irregularities in its subbid which rendered its rejection mandatory. The first is that Ahern left blank in its subbid the space available for reference to certain "addenda" to the plans and specifications mentioned in the prime contract between Rand and the school district. The agreed facts do not show (a) what these addenda were, (b) when they came into existence, or (c) that they existed when the subbids were filed. The addenda are not attached to the copy of the prime contract incorporated by reference in that statement. Nothing in the record shows that these addenda had anything to do

with the painting subcontract. The second irregularity asserted is the alleged discrepancy of $2 between the subbid filed by Ahern with Rand and that filed by Ahern with the school district. There is no agreement (as opposed to a statement of testimony) by the parties either upon the existence of this discrepancy[2] or upon facts showing that the trivial discrepancy had any significance. Nothing in this record leads us to infer that either alleged defect had any importance, or existed when the subbids were made. Even if such formal discrepancies did exist when the subbids were filed, they are too trivial to provide any basis for relief. See *Loranger* v. *Martha's Vineyard Regional High Sch. Dist. Sch. Comm.* 338 Mass. 450, 456.

2. Ahern argues that, in rejecting all subbids for heating and ventilating and in executing the prime contract with an allowance for this work, the school district took action which rendered the prime contract invalid under *Grande & Son, Inc.* v. *School Housing Comm. of No. Reading,* 334 Mass. 252, 258, and that any subcontract between it and Rand would have been similarly invalid. We need not decide whether the underlying contract could have been shown to have been invalid under the *Grande* case[3] by another general bidder aggrieved by its award to Rand, despite the fact that each of the general bidders used the Hurley heating and ventilating subbid as a partial basis for its bid. Between Rand and Ahern the subcontract would have been valid, although (a) it probably contained "important references to the underlying contract" and (b) if the underlying contract was invalid, it may be that, to a suit by Ahern on a signed subcontract, Rand would have had a defence based on excusable impossibility. See *M. Ahern Co.* v. *John Bowen Co. Inc.* 334 Mass. 36, 38-39, 41. Upon this record, however, Ahern has not shown that it was in any respect aggrieved by the school district's procedure with respect to

---

[2] Rand's records containing its copy of Ahern's subbid have been burned and were not available.

[3] As was pointed out in the *Loranger* case, 338 Mass. 450, 455, the statutes on bidding have been somewhat revised since the *Grande* decision.

the heating and ventilating subcontract, or that it suffered harm as a result of that procedure. With that subcontract, Ahern had no direct concern. In the circumstances, it has no standing to assert now, collaterally, as a basis for recovery, the possible impropriety of that procedure. See *Loranger* v. *Martha's Vineyard Regional High Sch. Dist. Sch. Comm.* 338 Mass. 450, 457, 459.

It may be pointed out that, in repudiating its subbid by its letter of September 14, 1955, Ahern did not rely upon any alleged infirmity in the school district's action on the heating and ventilating subbids. If this contention, never made until 1957 after the school building was completed, had been advanced in 1955, the school district could perhaps have avoided any risk of improper procedure. Instead, Ahern in its letter merely asserted that it had made an error[4] in computation. The practical effect of Ahern's repudiation of its bid has been to increase, in an amount exceeding Ahern's deposit, the school district's costs in performing a contract which no person entitled to do so has questioned, by forcing employment of the next lowest painting subbidder.

*Order for judgment affirmed.*

---

[4] Nothing in this record establishes that any error in computing its bid was in fact made by Ahern. Accordingly, there is no occasion for considering whether, in connection with bid deposits under G. L. c. 149, § 44B (as amended through St. 1954, c. 645, § 2), there is any room for application of principles like those discussed in *Mayor & City Council of Baltimore* v. *DeLuca-Davis Constr. Co. Inc.* 210 Md. 518, 535–536, upon which Ahern in part relies, or whether that decision can be said to represent the law of Massachusetts in view of § 44B and the cases cited in footnote 1, *supra*.