EDMUND CARRIER *vs.* BOARD OF HEALTH OF ROCKLAND.

Plymouth.   March 8, 1968. — May 7, 1968.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Contract*, Validity, Bidding for contract.   *Municipal Corporations*, Contracts.

An award by a municipality to the lowest bidder of a contract for maintenance of the municipal dump was not invalid by reason of his failure to file a bond and to sign the contract until after the times set forth in certain provisions of the specifications where the awarding authority explicitly waived compliance with such provisions and they did not affect performance of the contract. [294]

A contract for the maintenance of a municipal dump awarded to the lowest bidder was not invalid by reason of an inadvertent omission therefrom of requirements as to equipment and procedures to be employed in fire control which appeared in the specifications on which the bids were based. [294–295]

BILL IN EQUITY filed in the Superior Court on August 4, 1966.

The suit was heard by *Lurie*, J.

*William J. Cantelmo* for the plaintiff.

*James H. Kenney*, for the defendant, submitted a brief.

SPIEGEL, J. This is a bill in equity in which the plaintiff seeks to restrain the defendant from authorizing further payments under a contract with the David R. Casey Contracting Company, Inc. (Casey), for the maintenance of the Rockland town dump. The plaintiff also asks the court to order the defendant "to award said contract to . . . [the plaintiff] for the remainder of its term and reimburse . . . [the plaintiff] for any loss sustained by him . . . or in the alternative, to award damages to . . . [the plaintiff] for loss of the profit he would have realized on said contract." A decree was entered dismissing the bill, and from this decree the plaintiff appeals.

The trial judge made "Findings of Material Facts [and] Rulings of Law" which we summarize. "The [p]laintiff . . . had been the successful bidder in connection with the operation of the town dump for the year commencing May 1, 1965 and ending April 30, 1966. In January of 1966, the . . . [defendant] advertised in accordance with the by-laws of the town . . . and the provisions of . . . [G. L. c. 40, § 4B], inviting bids for the maintenance of the town dump and stating that specifications were available at the office of the Board of Health." The specifications included requirements as to equipment and procedures to be employed in fire control. Another provision of the specifications was that "The Board of Health reserves the right to . . . waive any informality of any bid . . . ." "The plaintiff's bid was in the amount of $10,000. The low bid was $9,900, from . . . [Casey]. On March 3, 1966, the Board of Health . . . wrote to . . . the successful bidder . . . : 'This is to inform you that it was the . . . vote of the Board . . . to award the contract . . . to you as low bidder in the amount of $9,900 providing you present to the Board by April 15, 1966 proof of bond, workmen's compensation and public liability as required in the specifications.'" This letter was an explicit waiver by the defendant of a requirement in the specifications that the successful bidder sign a contract with the board within five days of the notification of award. The necessary bond was furnished on April 13, 1966, and the

town and the successful bidder entered into a formal contract on April 30, 1966. "The contract does not contain the Fire Control Specification . . . ." The contract contains a clause providing that "Adequate hose and equipment shall be kept at the dump site by the second party for the control of fires." "[The] contract . . . was copied by a clerk in the town offices from the original contract awarded to the plaintiff in 1965, and this clerk failed to make the change as contained in the specifications . . . ." "[T]here was no evidence . . . that Casey has not complied with the terms relative to fire control as set forth in the specification . . . ."

The plaintiff contends that the waiver by the defendant of the time limits for the filing of the bond and the signing of the contract was one of "substantive requirements as set out in its own specifications" which could not be waived. While the power to allow departures from the specifications may be limited, here the waiver was clearly of provisions not affecting performance. There is nothing to suggest that the bids themselves did not conform to the specifications.

The plaintiff also argues that the interests of the public and the requirement of fairness to all bidders require the voiding of the contract because it does not contain the specifications in regard to fire control. The cases which the plaintiff cites are not apposite. In *Grande & Son, Inc.* v. *School Housing Comm. of No. Reading,* 334 Mass. 252, 258, the bid which was accepted was based on a subbid which deviated from the specifications. After acceptance, this portion of the original specifications was dropped from the contract. In *Gifford* v. *Commissioner of Pub. Health,* 328 Mass. 608, the plaintiff was likewise placed at an unfair disadvantage in bidding by a discrepancy in the subbids. In *Morse* v. *Boston,* 253 Mass. 247, an express change was made in the contract which materially altered the performance. In the case at bar, the plaintiff and Casey were on an equal footing when their bids were considered. Any discrepancy between the contract and the original specifications was purely inadvertent, and there was no evidence that the performance rendered has deviated from the specifications in

any way. We note that even if the contract between Casey and the town were found defective, this would not affect the validity of Casey's bid nor make the plaintiff the low bidder. Compare *Grande & Son, Inc.* v. *School Housing Comm. of No. Reading,* 334 Mass. 252.

We agree with the judge's ruling that the defendant "in no way violated any law in connection with the award to the low bidder" and that the plaintiff "has in no way been deprived of any right."

> *Decree affirmed with costs of appeal.*