MARI & SONS FLOORING COMPANY, INC. *vs.* SOUTHEASTERN
MASSACHUSETTS UNIVERSITY BUILDING AUTHORITY
& others.[1]

Middlesex.    May 16, 1975. — November 28, 1975.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Public Works. Contract,* For public works, Bidding for contract, Sub-
    contract. *Damages,* For failure to award public works contract.

Where sub-bids to a university building authority for the furnishing
    and installation of carpet in student housing were made after the
    award of the general contract, and none of the parties objected to

---

[1] The other defendants are M. Frank Higgins Co., Inc. and J. A. Schroeder Construction, Inc.

by-passing the procedures outlined in G. L. c. 149, § 44H, or resorting to procedures like those in G. L. c. 149, § 44I, the authority was required to award the contract to the lowest bidder. [581-585]

Where a university building authority used a bidding form required under G. L. c. 149, §§ 44A-44L, the competitive bidding statute, which specified that the bidder should submit a "net contract sum" for the furnishing and installation of carpet, the authority was required to award the contract to the bidder submitting the lowest "net contract sum" and not to the bidder submitting the lowest price per unit. [585-589]

BILL IN EQUITY filed in the Superior Court on February 9, 1973.

The suit was heard by *Donahue, J.*

*Gerald L. Nissenbaum* for the plaintiff.

*Sumner Darman* for the defendant M. Frank Higgins Co., Inc.

GOODMAN, J.    The plaintiff appeals from a decree declaring (G. L. c. 231A; *Fred C. McClean Heating Supplies, Inc.* v. *Westfield Trade High Sch. Bldg. Comm. of Westfield,* 345 Mass. 267, 269-270 [1962]) valid an award to M. Frank Higgins Co., Inc. (Higgins) of a contract for the furnishing and installation of carpeting in student housing which was contracted for by Southeastern Massachusetts University Building Authority (Authority) with J. A. Schroeder Construction, Inc. (Schroeder) as general contractor. The plaintiff attacks the trial judge's determination that Higgins was the "lowest eligible and responsible bidder" and argues that it, rather than Higgins, was the lowest bidder and entitled to the contract. (It was conceded that both the plaintiff and Higgins were "eligible and responsible.") The trial judge made findings and rulings. The evidence is reported.

1. We discuss first the argument made by Higgins[2] that

---

[2] Only Higgins among the defendants filed a brief in this case. The Authority stated in a letter to this court that Higgins' brief represented the position of the Authority. Schroeder did not file an answer or otherwise participate in the proceedings in the Superior Court or in this court.

582                                    3 Mass. App. Ct. 580

Mari & Sons Flooring Co., Inc. *v.* Southeastern Mass. Univ. Bldg. Authy.

the Authority was not in any event required to award the contract to the lowest bidder. We disagree.

Section 17 of the act[3] establishing the Authority (St. 1964, c. 703, as amended) makes applicable to the Authority the competitive bidding statute (G. L. c. 149, §§ 44A-44L), which has as one of its "fundamental . . . objectives . . . [to] enable [ ] the public contracting authority to obtain the lowest price for its work that competition among responsible contractors can secure." *Interstate Engr. Corp.* v. *Fitchburg,* 367 Mass. 751, 757 (1975). It is true, of course, that under § 44H of that statute it is contemplated that the sub-bids be opened before the general contract is awarded and that the qualifying sub-bids be circulated among prospective general contractors, each of whom is free to use a sub-bid which may not be the lowest. The general contractor does so, however, at the risk of elevating his own bid and losing the general contract (id., dissenting opinion at 762-764); and thus the interest of the public in the lowest possible cost is safeguarded.

In this case the Authority solicited bids for the carpeting contract after the general contract had been awarded — how long afterward does not appear from the record. But the Authority was assured that the cost would be minimized by the procedure established for the project in the general conditions and the supplementary general conditions of the United States Department of Housing and Urban Development (this being a federally aided project). Those conditions, included in the bidding documents (Condition No. 36 and Supplementary General Condition 2, both captioned "Stated Allowances"), provided a "Cash Allowance" for the furnishing and installation of carpet-

---

3 Section 17 reads in part: "The provisions of sections twenty-six to twenty-nine, inclusive, and of sections forty-four A to forty-four L, inclusive, of chapter one hundred and forty-nine of the General Laws, and the provisions of section thirty-nine F and thirty-nine G of chapter thirty of the General Laws are hereby made applicable to the Authority."

3 Mass. App. Ct. 580                                                583

Mari & Sons Flooring Co., Inc. *v.* Southeastern Mass. Univ. Bldg. Authy.

ing, thus fixing a flat amount which each bidder for the general contract was to include in his bid to cover this item instead of the amount of a specific sub-bid for this work. The general contractor was required to "purchase the 'Allowed Materials' [the carpeting, including installation in accordance with the specifications] as directed by the Owner [the Authority] on the basis of the lowest and best bid of at least three competitive bids" — with the general "contract price . . . adjusted accordingly" if there should be a difference between the amount of the carpeting sub-bid and the "Cash Allowance."

It is significant that this procedure is in substance the same as that provided in G. L. c. 149, § 44I(1) for the selection of a sub-bidder when, following an invitation for sub-bids pursuant to §§ 44C and 44H, "no sub-bid is filed . . . or . . . a rejection of all sub-bids . . . occurs." In such case an "addendum" is issued in lieu of a list of sub-bidders for the particular class of work which sets out "the amount to be included by a general bidder . . . for such sub-trade." Thereupon, the awarding authority solicits new sub-bids and the general contractor is required to "cause the work covered by such sub-trade to be done by the lowest responsible and eligible sub-bidder . . ." — with the general "contract price . . . adjusted by the difference between the sub-contract sum and the amount stated in the addendum."

Reading that condition and supplementary condition together with the "Form for General Bid" in § 44F (to which, as is unquestioned, the general contract was subject) in the light of §§ 44H and 44I, it is clear that the installation and furnishing of carpeting was intended to be, and was, encompassed in the total construction for which the general contractor was responsible. He was not, however, to do the carpeting as "[t]he work of the general contractor" in "Item 1" of the "Form for General Bid" but rather through a subcontractor. The carpeting was therefore a "class of work for which the awarding authority deem[ed] it necessary or convenient to receive sub-bids" pursuant to G. L. c. 149, § 44C(18), and was in effect a sub-bid under

"Item 2" of the statutory form for which, however, an "addendum" had been substituted.

"The work called for in the contract under consideration obviously was to be done in connection with the construction of a public building ... and was a necessary phase of the construction." *Gil-Bern Constr. Corp.* v. *Brockton,* 353 Mass. 503, 505 (1968). Accordingly, we conclude that the carpeting subcontract was subject to the competitive bidding statute.[4] Cf. *Sears, Roebuck & Co.* v. *School Comm. of Burlington, ante,* 399, 401-402 (1975), in which a carpeting contract was awarded separately from any other contract in a program for the rehabilitation of a school, and we nevertheless held that it could not be said as matter of law that the installation was so insignificant that the contract was one merely for the supply of goods, in which case it would not be subject to G. L. c. 149, §§ 44A-44L. In the instant case, as in the *Sears, Roebuck & Co.* case, the detailed specifications for installation of the carpeting suggest that the contract calls for "construction" rather than merely for the purchase of goods. But we need not dwell on this matter since Higgins concedes that in the circumstances of this case "carpeting could be included by the awarding authority under the catch-all in [§ 44C (18) ]", a concession which implies that the installation in this case was of sufficient significance so that the contract was one for "construction" and thus subject to the competitive bidding statute by virtue of the mandate of § 17 of St. 1964, c. 703 (see fn. 3).

To be sure, the competitive bidding statute contemplates the procedure outlined in § 44H before the Authority goes to the procedure in § 44I, but none of the parties has objected to the bypass of § 44H in this case or to the resort,

---

[4] Indeed, the subcontract, which was ultimately signed by Higgins and Schroeder, was in the form provided in § 44I, omitting only paragraph 5 (here inapplicable) which provides: "This agreement is contingent upon the execution of a general contract between the Contractor and the Awarding Authority for the complete work."

3 Mass. App. Ct. 580                                            585

Mari & Sons Flooring Co., Inc. *v.* Southeastern Mass. Univ. Bldg. Authy.

in substance, to § 44I in the first instance. Indeed, Higgins mentions in his brief that the Authority made the bidding procedures subject to the competitive bidding statute, but Higgins apparently did not think it sufficiently significant to mention the failure to follow § 44H. Higgins does point to various other deviations from the competitive bidding statute but only as indications that the Authority did not intend to apply the statute in its entirety. On our analysis, that is not material since the Authority was bound to do so.

In any event, whatever other deviations may or may not be tolerated[5], we are not inclined to compound the error (if error there be). It seems to us that the clear language of St. 1964, c. 703, § 17, and its obvious policy would bar the Authority, where — as here — the competitive bidding statute is applicable, from choosing a higher sub-bidder over the lowest sub-bidder at the expense of the Authority, absent some extraneous justification (§ 44D; *Interstate Engr. Corp.* v. *Fitchburg,* 367 Mass. at 758). See *Rudolph* v. *City Manager of Cambridge,* 341 Mass. 31, 35-36 (1960) (involving the interpretation of § 44I).

2. We agree with the plaintiff that it is entitled to a declaration that it was the lowest eligible and responsible bidder and that the Authority should have awarded it the carpeting subcontract. The bidding form which the Author-

---

[5] The bypass of § 44H in favor of § 44I does not seem to us to have resulted in added cost to the Authority or to have impinged on the other purpose of the public bidding statute to "establish [] an honest and open procedure for competition ... [and] place [] all general contractors and sub-bidders on an equal footing." *Interstate Engr. Corp.* v. *Fitchburg,* 367 Mass. at 758. Indeed, if anyone were disadvantaged by the bypass of § 44H, it would have been Schroeder, the general contractor, to which § 44H would have given some flexibility in choosing a subcontractor. Apart from the general contractor's interest, we do not see that the deviation was of significance, either to the parties or to the public. *Ahern Co. Inc.* v. *Acton-Boxborough Regional Sch. Dist.* 340 Mass. 355, 358-359 (1960). *Gil-Bern Constr. Corp.* v. *Brockton,* 353 Mass. at 505-507. See *Loranger* v. *Martha's Vineyard Regional High Sch. Dist. Sch. Comm.* 338 Mass. 450, 458-459 (1959). And there may have been good reason to handle the carpeting in this way.

586                                    3 Mass. App. Ct. 580

Mari & Sons Flooring Co., Inc. *v*. Southeastern Mass. Univ. Bldg. Authy.

ity required to be used in submitting bids is set out in facsimile below.

The "net contract sum" specified by the plaintiff on the bidding form was $64,695, and the yardage indicated was 6,400 square yards; Higgins' "net contract sum" was $66,-693, and the yardage indicated was 7,000 square yards. The plaintiff's "ADDITIONS OR DEDUCTIONS in yardage" totalled $10.05; Higgins' totalled $8.15, with a handwritten notation "material only." The three other nondisqualified bidders specified "net contract sum[s]" ranging from $70,-142 to $79,320; the yardage indicated with these sums ranged from 6,000 square yards to 7,200 square yards.

---

CARPET

PROPOSAL FORM

For furnishing and installing Carpet and Underlayment for the Student Housing — Phase II:

To: The Southeastern Massachusetts University Building Authority

Pursuant to and in compliance with the Instructions to Bidders, this Specification, and Plans and Specifications dated September 14, 1971 prepared by Hugh Stubbins and Associates, Inc., the undersigned hereby proposes to furnish and install Carpet as follows:

BASE BID

_____ square yards of carpet and underlayment for the net contract

sum of _____

Dollars ($ _____ ).

ADDITIONS OR DEDUCTIONS in yardage:

CARPET: $_____/sq.yd.

CARPET UNDERLAYMENT: $_____/sq.yd.

Date: _____

Signed: _____

By: _____

Address: _____

PROPOSAL FORM
Page 1

The Authority did not award the subcontract on the basis of the "net contract sum," which, in the plaintiff's bid, was about $2,000 less than in Higgins' bid and was the lowest of all the bids. Instead, it awarded the subcontract (as set out in the vote of the Authority) on the basis of the "lowest unit price for the yardage submitted." This figure was computed by dividing the "net contract sum" in the bidding form by the indicated yardage. The computation resulted in a "unit price" of $9.53 for Higgins and $10.11 for the plaintiff, and Higgins was awarded the subcontract.

We see no warrant for the method employed by the Authority. Whether the Authority could, in its discretion, have advertised for bids on a unit price basis (see *Pacella* v. *Metropolitan Dist. Commn.* 339 Mass. 338, 346 [1959]; *Quincy Ornamental Iron Works, Inc.* v. *Findlen*, 353 Mass. 85, 89 [1967]) is beside the point. The fact is that it did not do so. The bidding form required from each bidder a fixed sum (the "net contract sum") at which he proposed to furnish and install carpet and underlayment "[p]ursuant to and in compliance with the Instructions to Bidders, this Specification, and Plans and Specifications dated September 14, 1971 . . . ." The specifications provided that the "scope" of the work was to "[f]urnish and install all labor and materials required to complete CARPET work, as shown on the drawings and specified in this SECTION. . . ." Nowhere in the bidding documents did the Authority specify the square yardage of carpeting necessary to do the job to which a bidder would be required to commit himself.

The "SUB-CONTRACT FORM" (see fn. 4) which was included in the bidding documents, and to which the bidding was directed, also called for the subcontractor to "furnish all labor and materials required for the completion of all work specified for CARPETING — STUDENT HOUSING, PHASE II, SOUTHEASTERN MASSACHUSETTS UNIVERSITY, and the plans referred to therein. . . ." And this was to be done at a fixed price.[6] Clearly,

---

[6] The "SUB-CONTRACT FORM" provided in pertinent part: "The Subcontractor agrees to furnish all labor and materials required for

the undertaking was to carpet the specific spaces indicated on the drawings; it was not to furnish any specific yardage, for none was referred to in the "SUB-CONTRACT FORM." Higgins executed this contract for $66,693, the "net contract sum" in its bid. The plaintiff's bid was a proposal to sign the same contract for about $2,000 less.

The critical figure in the proposal form was clearly the "net contract sum" — the eventual contract price at which the lowest bidder was to undertake the carpeting. It measured the dollar cost to the Authority, since it was the figure with which the "Stated Allowance" — $90,000 — (discussed at p. 582 of this opinion) was to be compared to determine just how much would be subtracted from it (the difference accruing to the Authority) if the "net contract sum" were less than the "Stated Allowance," or how much the Authority would be required to add to the general contractor's price if the "net contract sum" exceeded the "Stated Allowance." In the instant case, the cost to the Authority was decreased by the difference between $90,000 and Higgins' bid of $66,693. Had the plaintiff's bid of $64,-695 been accepted, an additional $2,000 would have accrued to the Authority.[7]

Nor do we find any inconsistency to result from the provision in the bidding form for "ADDITIONS OR DE-DUCTIONS in yardage." Read in the light of paragraphs 17 and 18 of the General Conditions, that provision applies to carpeting either added to or eliminated from the work fixed by the specifications. Paragraph 17, entitled "Changes in Work," provides, ". . . Charges or credits for the work

---

the completion of all work specified for CARPETING — STUDENT HOUSING, PHASE II, SOUTHEASTERN MASSACHUSETTS UNIVERSITY, and the plans referred to therein . . . for SOUTH-EASTERN MASSACHUSETTS UNIVERSITY BUILDING AU-THORITY, all as prepared by . . . [the architect] for the sum of _____ . ___ __ ____ . Dollars ($ ____ __ . _____.) and the Contractor agrees to pay the Subcontractor said sum for said work."

[7] On our analysis, the yardage figure in the bidding form was purely informational. In a case where the yardage figure was completely out of line with the Authority's own estimate, the Authority would thus have been alerted that the bidder had made a gross mistake.

covered by the ... change shall be determined by one or more, or a combination of the following methods: (a) *Unit bid prices previously approved ...*" (emphasis supplied). And paragraph 18, entitled "Extras," provides, "Without invalidating the contract, the Owner may order extra work or make changes by ... *adding* to or *deducting* from the work, the contract sum being adjusted accordingly .... All the work of the kind bid upon shall be *paid for at the price stipulated in the proposal ...*" (emphasis supplied). It seems clear that the prices requested in the bidding form for the additions or deductions are intended to provide the "unit bid prices previously approved" if there should be changes in work, and the "price stipulated in the proposal" if there should be extras.

Accordingly, interpreting the bidding form to achieve internal consistency and consistency with all the bidding documents, we hold that the plaintiff was the lowest eligible and responsible bidder and was entitled to the award of the contract.

3. The plaintiff asks that damages be assessed against the Authority. It appears from the transcript that the question of damages was deferred until the issue of entitlement to the contract was decided, but the trial court's disposition of the case precluded litigation of that issue. Therefore, the trial court on remand will be required to deal with the matter and decide, in the light of the facts developed, the extent to which the case of *Sardella Constr. Co. Inc.* v. *Braintree Housing Authy. ante,* 326, 331-335 (1975), further appellate review granted 368 Mass. 817 (1975), is applicable. See *Sears, Roebuck & Co.* v. *School Comm. of Burlington, ante,* at 402-403 (1975).

The final decree is therefore reversed, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*