BERNARD RUDOLPH & others *vs.* CITY MANAGER OF CAMBRIDGE
& others.

Middlesex.  March 11, 1960. — May 4, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE,
& CUTTER, JJ.

*Public Works. Contract,* For public works, Bidding for contract. *Equity
Jurisdiction,* Taxable inhabitants' suit. *Equity Pleading and Practice,*
Decree, Intervention, Stipulation, Retention of jurisdiction, Amendment.

On a public construction project subject to G. L. c. 149, §§ 44A–44L,
inserted by St. 1956, c. 679, § 1, as amended, § 44I (2), read with the
general bid form prescribed by § 44F, did not authorize the awarding
authority, with the approval of the successful general bidder, to sub-
stitute a subbidder for certain work who had filed a subbid higher than
that of the subbidder named by the general bidder for that work, thus
increasing the general contract price, in purported reliance on a munici-
pal ordinance allowing some preferment of local bidders in awarding
contracts. [35]
The awarding authority on a public construction project subject to G. L.
c. 149, §§ 44A–44L, inserted by St. 1956, c. 679, § 1, as amended, with
the approval of the successful general bidder, may make a substitution
of another subbidder for one named by the general bidder pursuant to
§ 44I (2) and the general bid form prescribed by § 44F only for the
purpose of using a lower subbid than that of the subbidder so named or
by reason of incompetence of the subbidder so named. [35–38]
In a taxable inhabitants' suit under G. L. c. 40, § 53, attacking a substi-
tution of subbidders, increasing the general contract price, purportedly
made by the awarding authority on a public construction project with
the approval of the successful general bidder pursuant to G. L. c. 149,
§ 44I (2), inserted by St. 1956, c. 679, § 1, and the general bid form
prescribed by § 44F, a provision of the final decree ordering the award-
ing authority to restore the original lower subbidder named in the gen-
eral bid in the award of the general contract was beyond the scope of the
relief provided by § 53. [38–39]
Where, in awarding a contract for public construction work subject to
G. L. c. 149, §§ 44A–44L, inserted by St. 1956, c. 679, § 1, as amended,
a subbidder named in the bid of the successful general bidder was not
rejected on the ground of incompetency by the awarding authority
within the thirty days allowed by § 44A for awarding the general con-
tract, but an attempted substitution of another subbidder was made by
the awarding authority with the approval of the general bidder pur-

portedly under § 44I (2) and the general bid form prescribed by § 44F, which was solely for an invalid reason and was a nullity, the original subbidder named in the general bid became entitled to the subcontract. [39]

One intervening in a suit in equity "to contest the findings of fact and rulings of law" already made by the trial judge was not entitled to ask a redetermination of the facts on the ground that he intervened after the findings were made. [39–40]

In the circumstances of a suit in equity attacking a substitution of subbidders on a public construction project purportedly made by the awarding authority with the approval of the successful general bidder pursuant to G. L. c. 149, § 44I (2), inserted by St. 1956, c. 679, §1, and the general bid form prescribed by § 44F, where the final decree gave relief sought by ordering restoration of the original subbidder named in the general bid and restraining payment for the subcontract work until the restoration was accomplished, but the parties, who were all persons interested other than the general contractor, filed a stipulation providing for performance of the subcontract work by the substituted subbidder and for certain payments and adjustments, this court affirmed the substance of the decree and directed the trial court to retain jurisdiction to oversee the carrying out of the stipulation, to give the general contractor an opportunity to be heard, and to amplify or modify the stipulation if necessary with respect to the general contractor. [40–41]

A motion filed in this court by respondents appealing from the final decree in a suit, seeking to amend the answer to include allegations of occurrences subsequent to the trial and the decree, was denied by this court where such occurrences would not justify a certain material conclusion the establishment of which was the purpose of the motion. [41]

PETITION, filed in the Superior Court on April 30, 1959.

The suit was heard by *Hudson, J.*

*Richard D. Gerould,* City Solicitor, for the City Manager of Cambridge and another.

*Harold Rosenwald,* (*Paul A. Powell* with him,) for Columbia Cornice Company.

*Joseph M. Corwin,* for the petitioners and another.

WHITTEMORE, J. This is primarily a petition brought in the Superior Court by more than ten taxable inhabitants of Cambridge, under G. L. c. 40, § 53, to restrain the city manager and city treasurer (the respondents) from paying out money of the city for roofing and flashing work under a contract for the construction of a school building. A demurrer was overruled and the respondents appealed. The grounds stated were that the allegations were insufficient in law, and did not state a cause concisely and with substantial

certainty or a wrong for which a petition in equity was the proper remedy. After a hearing and the entry of findings of material facts, rulings of law and order for decree, Burgess & Blacher Company (Burgess) was allowed to intervene as an interested party and Columbia Cornice Company (Columbia) was admitted as an intervening respondent. The respondents and Columbia appealed from the final decree which granted relief asked in the petition.

The dispute involves the use of Columbia as subcontractor for roofing and flashing work in the construction of a school. Columbia and Burgess submitted bids for this work. Burgess was the lowest subbidder, and its subbid was incorporated in the bid of the lowest general bidder, John Bowen Co., Inc. (Bowen), to which the general contract was awarded. Before the award to Bowen the respondent city manager as the awarding authority, Bowen agreeing, substituted Columbia as the roofing subcontractor, and increased the general contract price by $174, the difference between the Burgess and the Columbia subbids.

The judge found that the sole basis of this substitution was Ordinance 270 of the city of Cambridge. The evidence was reported, and sustains the finding.[1]

Ordinance 270 purports to allow a preference in the awarding of contracts to bidders having their place of business in Cambridge. The ordinance is restricted to contracts below $10,000; each of the bids in question was about $38,000 in amount.

The submission of bids and the awarding of the contract were governed by G. L. c. 149, §§ 44A–44L, inserted by St. 1956, c. 679, § 1, and amended by St. 1957, c. 590, §§ 1, 2. Under this statute (§§ 44G–44H) the subbids are submitted to the general bidders through the awarding authority. Section 44A requires that the award of the general contract be made within thirty days of the opening of the general bids to the lowest responsible and eligible general bidder.

[1] The city manager testified: "I had heard something about the lack of responsibility on the part of Burgess & Blacher. . . . I didn't waive that aside completely . . . [but] the decision was based on the local ordinance and made it unnecessary to pass on the question of responsibility with respect to bidders."

Section 44I (2) provides: "If, after the selection of the lowest responsible and eligible general bidder, it be decided to consider sub-bidders other than the ones named by such general bidder . . . the awarding authority and such general bidder shall jointly consider all filed sub-bids not rejected under section forty-four H.  Any agreement to substitute . . . shall result in an adjustment of the general bid price . . . .  If by such substitutions . . . [that] bid price . . . becomes greater than the original . . . bid price of the second lowest responsible and eligible general bidder, then the latter shall be selected and his sub-bidders similarly considered . . . [and his bid, if adjusted, put in competition with the adjusted bid of the general bidder first selected and the bid of the third lowest responsible and eligible general bidder]."

Section 44I (2) is to be read with the form of general bid prescribed by § 44F which requires that each general bidder agree that "if he is selected . . . he will promptly confer with the awarding authority on the question of sub-bidders; and that the awarding authority may substitute for any sub-bid . . . a sub-bid duly filed with the awarding authority . . . against whose standing and ability the undersigned makes no objection; and that . . . [he] will use all such finally selected sub-bidders . . . and be in every way . . . responsible for them and their work . . . ."

1.  The respondents contend that, since the statute does not specify the grounds of a decision to substitute, the awarding authority has a broad discretion and its decision may not be set aside unless the officers acting "have acted corruptly or in bad faith[1] or so unreasonably or arbitrarily as to be guilty of a plain abuse of discretion."  *Slocum* v. *Medford,* 302 Mass. 251, 254, and cases cited.

These cases state the rule where the statute does not expressly or by implication limit the discretion of the awarding authority in determining with whom to contract directly for the doing of all the work.  Even in the absence of statu-

---

[1] As to bad faith, see *Kelley* v. *School Comm. of Watertown,* 330 Mass. 150, 153–154; *Pacella* v. *Metropolitan Dist. Commn.* 339 Mass. 338, 345–346.

tory restriction the discretion may be more limited when exercised in respect of a subbidder with whom the awarding authority will not contract and for whose performance it will look to the general contractor. We think such discretion could in any case be availed of only for a cause having some reasonable relation to a public interest which could be affected by the general contract. We think also that it was against the interest of the city to require that it pay more for doing the work than was otherwise necessary merely because of the mistaken belief that an inapplicable ordinance was applicable or that it indicated a valid policy applicable beyond its express terms. We do not suggest that had the ordinance been in terms applicable it would have supported a different result. The statute giving preference to local residents in "the employment of mechanics, teamsters, chauffeurs and laborers" (G. L. c. 149, § 26) at established wages contains no implication of support for a policy to burden a municipality with unnecessary expense. Although this holding is sufficient to show the correctness of the judge's conclusion that the subcontract was illegally awarded, the decree, in another aspect, discussed in section 3, below, and allegations in a motion to amend, stated in section 4, below, call for a construction of the statute.

2. The statute read as a whole shows an unmistakable intent that the power of the awarding authority to require the rejection of a subbid, which is in all formal aspects satisfactory, in favor of a higher available bid, may be exercised only for lack of competence of the rejected bidder.

Section 44D provides that ". . . In inviting sub-bids . . . the awarding authority shall reserve the right to reject any sub-bid . . . if it determines that such sub-bid does not represent the sub-bid of a person competent to perform the work as specified or that only one such sub-bid was received and that the price is not reasonable for acceptance without competition." This language implies that there is no right in the awarding authority to reject the lowest bidder on grounds not specified in this section or in § 44H. See *Grande & Son, Inc.* v. *School Housing Comm. of No.*

*Reading,* 334 Mass. 252, 258; *James Constr. Co. Inc. v. Commissioner of Pub. Health,* 336 Mass. 143, 146; *Brisk Waterproofing Co. Inc. v. Director of the Div. of Bldg. Constr.* 338 Mass. 784.

Section 44I (1) provides that if there is no subbid for a sub-trade, or all are rejected pursuant to § 44D or § 44H, "new sub-bids . . . shall be requested . . . [and in due course the] general contractor shall cause the work . . . to be done by the lowest responsible and eligible sub-bidder against whose standing and ability the general contractor makes no objection . . . ." This express restriction in the choice from among a second group of subbidders implies a similar restriction in the selection of a subbidder in the first instance.[1]    Compare comment on a forerunner of this provision in another connection in *East Side Constr. Co. Inc. v. Adams,* 329 Mass. 347, 354–355.

The intent of the statute to limit the awarding authority's right of selection among subbidders is shown also in § 44B (3) in the provision that all bid deposits of subbidders "except (a) those of the sub-bidders named in the general bids of the three lowest responsible and eligible general bidders and (b) those of the three lowest responsible and eligible sub-bidders for each sub-trade, shall be returned within five days . . . after the opening of the general bids. The bid deposits of sub-bidders not returned pursuant to the provisions of the preceding sentence shall be returned within five days . . . after the execution of the general contract . . . ."

Opportunity is needed to reject subbids on substantive grounds after a choice has been made among the general bidders.    Section 44I (2) in terms specifies that there be a conference between the awarding authority and the selected general bidder in the event that, after the selection of the latter, "it be decided to consider sub-bidders other than the ones named by such general bidder . . . ."    Two reasons for such consideration are apparent: (1) a lower subbid

---

[1] We need not determine how far the meanings of "competent" and "responsible and eligible" overlap.

than one used by the selected bidder, coupled with the possibility that the general bidder will be willing to contract with the lower subbidder even though he did not use that bid in the first instance; and (2) the determination of the awarding authority of the incompetence of the subbidder offered by the general bidder. Rejection of a subbidder after subbids have been submitted to the general bidders requires substitution of a subbidder which can occur only after the acceptability of another subbidder to the general bidder has been ascertained. See *Poorvu Constr. Co. Inc. v. Nelson Elec. Co. Inc.* 335 Mass. 545, 548.

That the statute may *permit* rejection for incompetence prior to the choice of the general bidder is not significant. This right of earlier rejection may follow from § 44H read with § 44D. Section 44H requires that subbids be filed at least four days before the date for opening general bids, and forthwith opened. It further requires that the awarding authority within two days reject every subbid which is not accompanied by a bid deposit, "*or which otherwise does not conform with sections forty-four A to forty-four L, inclusive,* or which is . . . incomplete, conditional or obscure, or which contains any addition not called for" (emphasis supplied). It may be said that the bid of an incompetent subbidder "does not conform with" the implied requirement in § 44D that each subbid be made by a competent bidder and so may be rejected when opened if the incompetence is known. However that may be, the awarding authority in rejecting bids under § 44H in the two day period allowed will necessarily be concerned, usually and primarily, with formal deficiencies. See *Loranger* v. *Martha's Vineyard Regional High Sch. Dist. Sch. Comm.* 338 Mass. 450, 458–459. And there is certainly no implication that the awarding authority may not, after the expiration of the two day period allowed by § 44H, act under § 44I (2) to reject subbidders for lack of competence. Two days may in most cases be insufficient time within which to determine competence. Indeed, in the statute as originally enacted (St. 1939, c. 480), the rejection for lack of competence

was, by § 44C (E), required to be by agreement "between the bidders and the awarding authority." See also St. 1941, c. 699, § 4, amending § 44C (E).

We see in § 44I (3) no implication contrary to our holding. This section provides that, if a selected subbidder fails to execute his subcontract, the selected general bidder and the awarding authority "shall select, from the other sub-bids duly filed with the awarding authority . . . and not rejected under section forty-four H, a responsible and eligible sub-bidder at the amount named in his sub-bid as so filed . . .." The bidder to be selected cannot surely be the lowest as such bidder may not be satisfactory to the general bidder; there is no occasion therefore to imply in this section the right in the awarding authority to reject a bidder who is competent.

Section 44I (2) therefore stands as consistent with the other express provisions of the statute and with the strongly implied policy of the statute to allow rejection of subbids of competent acceptable and available subbidders if they are not the lowest such bids. It is a useful and reasonably necessary provision to implement the policy of the statute. Under it the contracting public body is assured of the opportunity of requiring that the work be done by a competent general contractor using competent subcontractors who are acceptable to him and willing to work for him at the lowest price which all bids filed will permit.

3. We turn to the relief provided by the decree.

Inter alia, and following a prayer of the petition, the decree ordered the treasurer to make no payment for the roofing and flashing work under the Bowen contract unless and until Bowen had entered into a contract with Burgess at the latter's bid price. Restraint of payments for this work was in any case required and it is not necessary now to determine whether any payments for any work could lawfully be made under the Bowen contract as awarded. See Gifford v. Commissioner of Pub. Health, 328 Mass. 608, 616–617.

The decree in ordering the city manager to substitute

Burgess for Columbia in the award of the general contract to Bowen is beyond the scope of the relief on a petition brought under G. L. c. 40, § 53. *Lynch* v. *Cambridge,* 330 Mass. 308, 311. *East Side Constr. Co. Inc.* v. *Adams,* 329 Mass. 347, 353. *Clark* v. *Mayor of Gloucester,* 336 Mass. 631, 632. Furthermore the statute gives to the awarding authority and not to the court the determination of the competence of bidders. *Capuano, Inc.* v. *School Bldg. Comm. of Wilbraham,* 330 Mass. 494, 496.

It does not follow, however, that in the special circumstances of this case, stated in following paragraphs, the decree must be reversed.

We note first that within the thirty days available therefor Burgess had not been rejected because incompetent and there had been no valid decision or agreement to substitute any bidder for Burgess. The statute does not require that substitution be considered or that it occur. It does require (§ 44A) that the general contract be awarded within thirty days. The decision to substitute, solely for an invalid reason, was nugatory, and Bowen was under obligation at the required time to execute a subcontract with Burgess, the subbidder whose bid it had included in the general bid. Thus Burgess had a right to the subcontract. We intend no suggestion that a subbidder not chosen by the procedures of the statute even though a lower subbidder than the one chosen has a right to require his selection. See *East Side Constr. Co. Inc.* v. *Adams,* 329 Mass. 347, 353–355.

We note also that the petition asked that Burgess be restored as the subcontractor, that all persons affected are parties except Bowen, that the demurrer did not specify multifariousness as a ground, and that if, nevertheless, another proceeding were held to be necessary, the issue which would be presented therein has been conclusively determined as to all parties to this decree. Columbia may not ask a redetermination of facts which underlie the decree on the ground that it intervened after the findings were made. Intervention "to contest the findings of fact and rulings of law made by the trial court" (Columbia's peti-

tion) implied that Columbia would be bound by the result of that contest. Restatement: Judgments, § 79, comment f.

It is not now relevant whether the awarding authority if it had elected to consider substitution for a statutory reason might conceivably have rejected Burgess notwithstanding the evidence reflected in the judge's finding that Burgess is "highly responsible, eligible and competent."

The absence of Bowen would, nevertheless, require substantial modification of the final decree entered September 16, 1959, were it not for the effect of a stipulation filed by the parties two days after the entry of the decree and indorsed on that day "(as of 1959 September 15) Filed in court and approved." This stipulation was designed, pending the decision on the appeal, to permit the performance and possible completion of the work by Columbia, with alternative provisions for money adjustments between the parties. This had the effect of modifying the decree, dissolving the restraint, and allowing Columbia to perform in the right of Burgess. Included are provisions that the city manager will pay Bowen in accordance with the contract as awarded and Bowen (not a party to the stipulation) will pay Columbia in accordance with its subcontract and if the decree is affirmed after the work is completed Columbia will pay the city of Cambridge the sum of $174. If the work is partially performed when the appeal is decided there are to be other adjustments intended, inter alia, to assure the city the $174 advantage and to save Bowen harmless. In view of the stipulation we discern no way in which Bowen will be adversely affected by compliance of others with the decree as modified by the stipulation. The effect of the stipulation is that, in order to make operative a court approved procedure to permit the contract to be performed and assure the city the benefit of the lower bid, the issues underlying the decree must be decided. We are not deterred, therefore, in our decision of these issues by the possible effect of payment under the stipulation to render G. L. c. 40, § 53, inapplicable. See *Fuller* v. *Trustees of Deerfield Academy*, 252 Mass. 258, 259–260; *Morse* v. *Boston*, 260

Mass. 255, 264; *Lynch* v. *Cambridge,* 330 Mass. 308, 311. Thus we think the circumstances dictate affirming the decree with qualifications to be noted. We intend no suggestion, however, as to the advisability in another case or on other facts of the post-decree procedures here adopted. The qualifications are that the Superior Court must retain jurisdiction to oversee the carrying out of the stipulation; in connection therewith, must give Bowen an opportunity to be heard; and, if amplification or modification of the stipulation is needed to carry out the intent in respect of Bowen, must enter the appropriate order.

4. We have denied the respondents' motion to amend their answer, filed in this court, which sought to include allegations that on February 1, 1960, the city manager wrote Bowen asking that it join in ratifying and confirming the rejection of Burgess and the substitution of Columbia on grounds which included "doubt . . . [of] the reliability and responsibility of Burgess," knowledge of the reliability of Columbia, good experience of the city with Columbia, and a policy to help local residents where differences in bid are insignificant; and that Bowen replied that it contracted with Columbia at the request of the awarding authority and "[i]n accordance with your request . . . hereby ratify and affirm our previous action." Even if such motion were timely, the facts belatedly sought to be proved, taken with the facts plainly established in the record, would not justify the conclusion that Burgess had been rejected for lack of competence. See, for illustrations of the exercise of the power to amend in this court under G. L. c. 231, § 125, *Twombly* v. *Selectmen of Billerica,* 262 Mass. 214, 216–217; *Margolis* v. *Margolis,* 338 Mass. 416, 418.

5. The interlocutory decree is affirmed. The substance of the final decree is affirmed. The Superior Court is to retain jurisdiction to oversee action under the stipulation in accordance with this opinion.

*So ordered.*