INTERSTATE ENGINEERING CORP. *vs.* CITY OF FITCHBURG & others.[1]

Middlesex. October 15, 1974. — May 16, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Public Works. Contract,* For public works, Bidding for contract, Subcontract.

Where it appeared that between the opening of the filed subbids on a public works project of a city subject to G. L. c. 149, §§ 44A-44L, and the submission of the general bids it was arranged between a subbidder which had submitted a filed subbid for interior piping work and a prospective general bidder, to which the general contract was later awarded, that the subbidder would do exterior piping work, constituting a part of general contractor's work and to be covered by item 1 of the general bid, at a price substantially below cost and that the general bidder in item 2 of its general bid would list the subbidder for the interior piping work at the price stated in its filed subbid, although that price was not the lowest filed for the interior piping work, it was held that under § 44H such arrangement between the subbidder and

---

[1] The other two defendants are Limbach Company and Westcott Construction Corporation.

the general bidder amounted to an unlawful "variance" of the subbidder's filed subbid for the interior piping work and that such subbid was "of no effect" and invalid, notwithstanding that such arrangement would have resulted in a substantial saving to the city in connection with the project [756-762]; WILKINS, J., joined by BRAUCHER, J., dissenting.

Where the second lowest of the filed subbids for certain work on a public works project subject to G. L. c. 149, §§ 44A-44L, was listed by the successful general bidder in item 2 of its bid, but was held invalid by this court, the lowest subbidder for such work did not automatically become entitled to the subcontract therefor; the procedures for substitution of another subbidder set forth in § 44I must be followed. [762]

BILL IN EQUITY filed in the Superior Court on July 25, 1973.

The suit was heard by *Rutledge, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Sally A. Corwin* (*Joseph M. Corwin* with her) for the plaintiff.

*Francis H. Fox* for Limbach Company.

*Robert J. Sherer* for Westcott Construction Corporation.

TAURO, C.J.   The plaintiff appeals from a final decree which declared valid a subbid for certain mechanical work, which had been filed with the defendant city of Fitchburg by the defendant Limbach Company (Limbach).

The judge made findings of fact, which are not challenged.   In the early part of 1973, the city invited general bids and subbids for the construction of a wastewater treatment facility.   As authorized by G. L. c. 149, § 44C (as amended through St. 1970, c. 497), the city established interior piping work as a separate category of work for the receipt of subbids.[2]   Although certain ex-

---

[2] Section 44C lists seventeen classes of work for each of which a separate section must be included in the specifications, if the awarding authority estimates its costs to exceed $1,000.   Addition-

terior piping was included in the project, no subbids were requested for that work. Therefore, that exterior work was to be done as part of the work covered solely by the bid of the general contractor.

On May 9, 1973, various subbids were submitted for the interior piping work.[3] The plaintiff's bid in the

---

ally, an awarding authority may establish separate specifications for "any other class of work for which the awarding authority deems it necessary or convenient to receive sub-bids." General Laws c. 149 makes no subsequent distinction between subbids on such work and subbids on work which § 44C requires to be put out to bid.

[3] Subbidding procedure is regulated by G. L. c. 149, § 44H (as amended through St. 1965, c. 836, §§ 4, 5, 6). The statute provides in relevant part: "Every sub-bid in connection with a contract subject to section forty-four A for a sub-trade designated in Item 2 of the general bid form pursuant to section forty-four C shall be for the complete work of the sub-trade as specified, and shall be filed with the awarding authority, in a sealed envelope, before twelve o'clock noon at least four days . . . before the day fixed by the awarding authority for the opening of general bids, and forthwith after the time limit for the filing thereof shall be publicly opened and read by the awarding authority, which, within two days thereafter . . . shall reject every sub-bid which is not accompanied by a bid deposit as prescribed in subsection (1) of section forty-four B, or which otherwise does not conform with sections forty-four A to forty-four L, inclusive, or which is on a form not completely filled in, or which is incomplete, conditional or obscure, or which contains any addition not called for; provided, however, that the failure of the awarding authority to reject such a sub-bid within such period shall not validate such a sub-bid nor preclude the awarding authority from subsequently rejecting it. Not later than the second day . . . before the day fixed by the awarding authority for the opening of general bids, the awarding authority shall mail to every person on record as having taken a set of plans and specifications a list of sub-bidders arranged by sub-trades and listing for each sub-trade the name, address and sub-bid price of every sub-bidder submitting a sub-bid thereon not rejected by the awarding authority and the general bidders excluded from using such sub-bid. A person shall not be named by a general bidder as a sub-bidder for a sub-trade in Item 2 of the general bid form unless such person is included for such sub-trade in said list. . . . Every sub-bidder duly filing a sub-bid with the awarding authority as aforesaid shall be bound thereby to every general bidder not excluded therein from the use thereof; and any variance from such sub-bid communicated to a general bidder shall be of no effect."

amount of $3,038,000 was the lowest. Limbach submitted the second lowest bid, in an amount which was $86,000 higher than the bid of the plaintiff.

On May 15, 1973, the day before bids from general contractors were due, a representative of Limbach told the president of the defendant Westcott Construction Corporation (Westcott), a company planning to submit a general bid, that Limbach was working on a price for the exterior piping work. The president of Westcott advised Limbach that he was interested in the combined price for the interior and exterior piping work. On the morning of May 16, 1973, before the general bids were filed, Limbach quoted to Westcott a price of $76,000 for the exterior piping work and stated that the combined price for all piping work would be $3,200,000. Westcott and Limbach clearly understood that as a condition to the availability of a price of $76,000 for the exterior piping work, Westcott would have to list Limbach as the subcontractor to do the interior piping work. They also understood that Limbach was willing to do the interior work for the bid price of $3,124,000 in any event. Before bids were opened, the plaintiff quoted to Westcott a price of $305,350 for the exterior piping work.

Westcott submitted a general bid to the city, listing Limbach as its selected subbidder for the interior piping work, at Limbach's filed subbid price. In arriving at its total bid for the general contract Westcott took into account Limbach's proposed price of $76,000 for the exterior piping work. Westcott entered into separate subcontracts with Limbach for the interior and exterior piping work at the prices previously advanced by Limbach.[4] Westcott's bid was the lowest, and the city awarded the contract to Westcott.

The plaintiff protested to the city Westcott's inclusion of Limbach. However, Westcott rejected the city's

---

[4] These contracts were conditioned on Westcott's being awarded the general contract.

request to substitute the plaintiff for Limbach as the subcontractor for the interior piping work. See G. L. c. 149, § 44F (as amended through St. 1961, c. 604, § 5), and G. L. c. 149, § 44I (2) (as amended through St. 1967, c. 884). After a hearing on the Plaintiff's request, the Department of Labor and Industries ruled on June 6, 1973, that there had been "no violation of the Fair Competitive Bid Law on the facts as presented." This bill for declaratory relief was filed on July 25, 1973.

The judge did not find, and had no evidence from which he could find, the precise amount by which Limbach's bid of $76,000 for the exterior piping work was below the reasonable cost of doing that work. He did find, however, that "the estimated cost of the exterior piping work on the sewer treatment plant would substantially exceed $76,000." We conclude, as we may, that Limbach bid the exterior piping work well below cost as an inducement to Westcott to select it as the subcontractor for the interior piping work.[5] The judge also found that the award of the two subcontracts to Limbach resulted in an over-all saving to the city of approximately $143,000 compared to the price at which the plaintiff would have done the same work.

The judge entered a final decree after hearing, declaring that the Limbach bid was valid, that Limbach entered into two separate, valid contracts with Westcott, and that the plaintiff had no right to the subcontract for the interior piping work. The plaintiff appealed. We granted the plaintiff's request for direct appellate review.[6]

---

[5] The evidence is reported. In such a situation we may make findings which are not inconsistent with those made by the judge. See *All Stainless, Inc.* v. *Colby*, 364 Mass. 773, 776 (1974), and cases cited.

[6] As indicated above, this matter is now before us on an appeal with a report of the evidence and findings of fact. This case was argued before this court on May 10, 1974, on appeal from the final decree described in the opinion. That decree, although entered after trial, was based solely on the allowance of Westcott's motion for a

The plaintiff argues that the city, as the awarding authority, was obligated to reject Limbach's subbid because (1) that subbid was "conditional" and (2) the arrangement between Limbach and Westcott constituted in effect, if not in fact, an unlawful variance of Limbach's filed subbid. In support of its first contention, the plaintiff points to the language of G. L. c. 149, § 44H (as amended through St. 1965, c. 836, §§ 4, 5, 6), which provides that the awarding authority "shall reject every sub-bid which is . . . conditional." In support of its second argument, the plaintiff relies on the provision in § 44H that condemns any variance from a filed subbid and on its view of the legislative purpose for the public bidding requirements of G. L. c. 149, §§ 44A-44L.

We agree with the plaintiff's second argument and hold that the arrangement between Limbach and Westcott constituted an unlawful variance in Limbach's filed subbid. Accordingly, we do not decide whether the arrangement rendered the filed subbid "conditional."

1. We deal here with the competitive bidding statute, G. L. c. 149, §§ 44A-44L. The statute provides that certain public contracts "shall be awarded to the lowest responsible and eligible general bidder on the basis of competitive bids in accordance with the procedure set forth . . . sections forty-four B to forty-four L." G. L. c. 149, § 44A (as amended through St. 1967, c. 899). General contractors must select their subcontractors for so called Item 2[7] work from a list of subbidders circulated to

decree on the pleadings. We remanded the case to the Superior Court "in order that the trial judge may make findings of fact." Findings of fact have been filed with us, and we have allowed Limbach's motion for an order directing the transmission of the transcript and the exhibits to us.

There is no question that the plaintiff has standing to challenge action of an awarding authority which is asserted to be in violation of G. L. c. 149, §§ 44A-44L. See *Quincy Ornamental Iron Works, Inc.* v. *Findlen,* 353 Mass. 85, 87 (1967), and cases cited.

[7] Under G. L. c. 149, § 44C, Item 2 work is work for which subbids are invited by the awarding authority. See fn. 2. Item 1

all prospective general contractors by the awarding authority[8] after the opening of sealed, filed subbids. G. L. c. 149, § 44H.[9] Each subbidder is "bound" to every general bidder "not excluded" from the use of its subbid by the terms of the subbid. G. L. c. 149, § 44H. The statute specifically provides that "any variance from such sub-bid communicated to a general bidder shall be of no effect." G. L. c. 149, § 44H. "[I]n matters of substance there must be strict compliance with the requirements" of G. L. c. 149, §§ 44A-44L. *Chick's Constr. Co. Inc.* v. *Wachusett Regional High Sch. Dist. Sch. Comm.* 343 Mass. 38, 41 (1961). Accord, *Poorvu Constr. Co. Inc.* v. *Nelson Elec. Co. Inc.* 335 Mass. 545, 552 (1957).

We construe G. L. c. 149, §§ 44A-44L, as we must, in the light of the legislative objectives which were served by its enactment so as to effectuate the purpose of the framers. See *Morse* v. *Boston,* 253 Mass. 247, 252 (1925); *Commissioner of Corps. & Taxn.* v. *Assessors of Boston,* 324 Mass. 32, 36 (1949); *Pacella* v. *Metropolitan Dist. Commn.* 339 Mass. 338, 342 (1959). We discern two fundamental, complementary legislative objectives underlying the competitive bidding statute. First, the statute enables the public contracting authority to obtain the lowest price for its work that competition among responsible contractors can secure.[10] By binding sub-

work is all work which is not included in Item 2 and which is deemed the "work of the general contractor" (though, of course, the general contractor may have others perform the work). See G. L. c. 149, § 44F. The item numbers refer to item numbers on the standard general bid form set out in G. L. c. 149, § 44F.

[8] The awarding authority is empowered to reject nonconforming subbids. See G. L. c. 149, § 44H. See, e.g., *Kopelman* v. *University of Mass. Bldg. Authy.* 363 Mass. 463 (1973). Rejected bids will not, of course, be listed.

[9] Relevant statutory language is set out in fn. 3.

[10] In *Rudolph* v. *City Manager of Cambridge,* 341 Mass. 31, 38 (1960), we said that "the contracting public body is assured of the

bidders (see G. L. c. 149, § 44H) and general contractors (see G. L. c. 149, § 44A) to their original filed bids, the statute encourages them to file their lowest profitable bid in the first instance. A subbidder who hopes to win a portion of a contract cannot expect to modify his subbid in the future to meet competition. Second, the statute establishes an honest and open procedure for competition for public contracts and, in so doing, places all general contractors and subbidders on an equal footing in the competition to gain the contract.[11] The statutory procedure facilitates the elimination of favoritism and corruption as factors in the awarding of public contracts and emphasizes the part which efficient, low-cost operation should play in winning public contracts. See *Morse* v. *Boston*, 253 Mass. 247, 252 (1925); *Burt* v. *Municipal Council of Taunton*, 272 Mass. 130, 133 (1930); *Sweezey* v. *Mayor of Malden*, 273 Mass. 536, 540 (1931).[12] See generally *Pacella* v. *Metropolitan Dist. Commn.* 339 Mass. 338, 342 (1959).

The provision of G. L. c. 149, § 44H, which condemns a variance from the terms of a filed subbid is a keystone in this statutory scheme. The provision prohibits any change in the terms of the filed subbid. Through such prohibition, it fosters competition among subbidders at the time of the initial filing and helps assure that no general contractor will receive an advantage over its competitors. In construing an earlier version of the

---

opportunity of requiring that the work be done by a competent general contractor using competent subcontractors who are acceptable to him and willing to work for him at the lowest price which all bids filed will permit."

[11] The sections of the General Laws (G. L. c. 149, §§ 44A-44L) are captioned "FAIR COMPETITION FOR BIDDERS ON CONSTRUCTION, ETC., OF PUBLIC WORKS." See St. 1939, c. 480.

[12] These cases were decided under a forerunner of the present competitive bidding statute. Their learning as to the purposes which are served by such statutes is still valid.

current statute,[13] we observed, "The recorded subbids, as filed, must be strictly adhered to, and cannot be varied. A subbid once filed by a subcontractor must have *an identical meaning for all general contractors.* After the time for filing has expired, a subbid is not subject to change, and is, of course, beyond modification by private, confidential, or secret communication between the subcontractor and the general contractor" (emphasis supplied). *Gifford* v. *Commissioner of Pub. Health,* 328 Mass. 608, 615 (1952). See *Poorvu Constr. Co. Inc.* v. *Nelson Elec. Co. Inc.* 335 Mass. 545, 552 (1957).

With the above described statutory purposes in mind, we hold that the arrangement between Limbach and Westcott constitutes an unlawful variance in the terms of Limbach's subbid. When a subbidder such as Limbach offers to perform a portion of the general contractor's Item 1 work on a project at a price which is substantially below the estimated cost of performance and conditions that performance on acceptance of its subbid for a portion of the Item 2 work on the same project, the subbidder has, in reality, varied the terms of its subbid. Such an arrangement is the effective equivalent of a variance in the specific terms of the filed subbid. Since the general contractor must perform all Item 1 tasks, an offer of below-cost performance for one of those tasks immediately reduces the general contractor's estimate of over-all cost for Item 1 performance and lowers the price at which it may profitably perform the entire contract. The bid for the entire contract submitted by the general contractor may be lowered correspondingly. Simultaneously, the subbid on which the below-cost offer is conditioned becomes more attractive. In the instant case, Limbach's offer to install exterior piping (an Item 1 task) for $76,000 reduced the *effective price* to Westcott of Limbach's interior piping subbid (Item 2) below the

---

[13] G. L. c. 149, §§ 44A-44D, inserted by St. 1939, c. 480, as amended.

stated $3,124,000 figure in the filed subbid. To match Limbach's package offer (subbid plus conditional offer), a competitor would have had to submit a subbid priced considerably[14] below Limbach's filed subbid. Though Limbach has not retreated from the stated price of its subbid and Westcott has listed the subbid as filed, Limbach has altered the effective terms of its subbid.

Were we to hold such an effective variance lawful, opportunities for circumvention of the statute and subversion of the statutory purposes would be legion. Subbidders could file subbids with an extra margin of profit without fear of losing the contract to competitors. They could rely upon *subsequent* bargaining with prospective general contractors to modify the effective terms of an uncompetitive subbid. Thus, public authorities could no longer be assured of receiving the optimum low subbids for projects, and general contractors would no longer know that they stood on an equal footing with other general contractors.[15] Unscrupulous general contractors and subbidders would have manifold opportunities to pressure other bidders desirous of securing the job. We cannot countenance this result and believe the statutory scheme requires that we proscribe such machinations.[16]

---

[14] As noted previously, the trial judge had no evidence from which he could find the precise amount by which Limbach's bid for exterior piping was below the reasonable cost of doing that work.

[15] We attach no significance in the instant case to the fact that Limbach made the same below-cost offer to the only other general contractor which was not prepared to install the interior piping itself and which was employing subbidders for the job. See G. L. c. 149, § 44J. Such offers contravene the competitive bidding statute whenever they are made. A subbidder cannot legitimize a variance by offering the variance to every general bidder.

[16] Although economy in public spending is always desirable, it cannot be permitted to be a factor in our analysis here at the expense of condoning unlawful bidding practices. Thus benefits to the awarding authority through reduction in price of the over-all bid

Limbach urges that any holding that there has been a variance of its subbid would "lead the law into . . . a quagmire." It raises the specter of multiple litigation by disappointed subbidders and seeks to cast doubt on the ability of courts to fashion limitations for this holding.[17] However, possible difficulties of this sort are speculative and cannot determine the outcome of this case. In the instant case, the plaintiff has proved that Limbach offered to perform Westcott's Item 1 work substantially below cost, that Limbach conditioned its offer on acceptance of its subbid for Item 2 work on the same project, that Westcott accepted the offer as conditioned, and that Westcott listed Limbach as its subcontractor for such Item 2 work. We hold such proof sufficient. Subsequent cases will depend on the plaintiff's ability to prove that the effective equivalent of a variance in the subbid has been made.

2. Having found a variance in the subbid, we must follow the statutory command that variances are to "be of no effect." G. L. c. 149, § 44H. Limbach argues in its brief that the language of the statute suggests that only the variance and not the subbid shall be nullified if the court finds an unlawful variance in a subbid. We do not today decide that this is the proper construction. We believe that, in the instant case, we need only render the variance of "no effect" by invalidating Limbach's subbid.

---

cannot excuse violation of the statutory requirements. *Grande & Son, Inc.* v. *School Housing Comm. of No. Reading,* 334 Mass. 252, 258 (1956). *Chick's Constr. Co. Inc.* v. *Wachusett Regional High Sch. Dist. Sch. Comm.* 343 Mass. 38, 42 (1961). Moreover, permitting such a practice could frustrate the stated purpose of the statute, G. L. c. 149, §§ 44A-44L, indicated in the title, namely "FAIR COMPETITION FOR BIDDERS ON CONSTRUCTION . . . OF PUBLIC WORKS."

[17] We do *not* today hold that every offer by a subbidder to do other work for a prospective general contractor is unlawful. We do not in any way seek to deter *lawful* contracts between subbidders and prospective general contractors.

Failure to invalidate the subbid would give Limbach the benefit of its arrangement with Westcott and, thus, would give "effect" to the variance which, we infer,[18] induced acceptance of the high Limbach subbid.

3. The plaintiff asks that we declare that it has a right to the subcontract once Limbach's subbid is declared invalid. This we decline to do. "A subbidder has no right to insist that his subbid, however low, be accepted by a general contractor." *East Side Constr. Co. Inc.* v. *Adams*, 329 Mass. 347, 354 (1952). Accord, *Rudolph* v. *City Manager of Cambridge*, 341 Mass. 31, 39 (1960). It is not clear from the record that the plaintiff is acceptable to Westcott. See *Rudolph* v. *City Manager of Cambridge, supra*, at 38. In any event, the statute (G. L. c. 149, §§ 44H and 44I) provides procedures for substitution of another subbidder after a subbid has been rejected. We believe such procedures, which involve consultation between the selected general bidder and the contracting public authority, must be followed.

The interlocutory decree is reversed. The final decree is reversed. A judgment is to be entered declaring invalid Limbach's subbid for the interior piping work of the Fitchburg wastewater treatment facility. The judgment will be in conformity with this opinion in all other respects.

*So ordered.*

WILKINS, J. (dissenting, with whom Braucher, J., joins). I believe that the court's decision extends public regulation of subbidding practices for public buildings beyond the range intended by the Legislature, increases the cost of public buildings, and unreasonably burdens awarding authorities.

---

[18] See fn. 4.

The problem in this case is that an apparent unfairness to the plaintiff in the conduct of the general contractor and the selected subbidder has inspired a judicial extension of the public bidding law beyond its plain limits. Neither the language of the statute nor its legislative history shows any intention to regulate relationships between general contractors and subbidders with respect to nonfiled categories of work. All parties agree that a general contractor may contract with others to do work covered by its general bid. They further agree that a general contractor may make such contracts with persons who have been selected, or might be selected, by the general contractor as subbidders on work requiring a filed subbid. Most importantly, while our bidding statutes have required the selection of the lowest responsible general bidder, they have not required the selection or use of the lowest responsible subbidder. See *East Side Constr. Co. Inc.* v. *Adams,* 329 Mass. 347, 353-355 (1952); *Rudolph* v. *City Manager of Cambridge,* 341 Mass. 31, 39 (1960).

A general contractor is free to select a subbider who is not the lowest, at the risk of elevating its own bid and losing the general contract. The statute focuses on the lowest over-all general bid, and if it is made lower by an arrangement between the general contractor and a subbider such as exists here, that legislative purpose is encouraged. Although reduction in the over-all price to the awarding authority does not justify a violation of a bidding regulation (*Chick's Constr. Co. Inc.* v. *Wachusett Regional High Sch. Dist. Sch. Comm.* 343 Mass. 38, 42 [1961]), the achievement of a lower cost to the awarding authority, and hence to the taxpayers, is a legislative purpose which properly may be considered in construing the object of the statute.

The court's opinion treats the arrangement between Westcott and Limbach as a variance from the terms of the filed subbid. The filed subbid was not varied in any respect. Even if the separate arrangement concerning

the outside work were treated as a variance of the filed subbid, § 44H provides that any variance or modification of a filed subbid is to "be of no effect." The subbid as filed survives; the variance does not. The court's opinion, however, gives force to the asserted variance and invalidates the subbid. That result is plainly contrary to the language of the statute.

By extending regulation to nonfiled subbids, the court opens for scrutiny all conduct between a general contractor and a subbidder from the time of the filing of subbids until the selection of a subbidder. This decision makes any concession by a subbidder, intended or inadvertent, which benefits a general contractor a ground for invalidation of a filed subbid.

Furthermore, the burden of compliance by awarding authorities with the bidding statutes is increased greatly by the court's decision. The public interest would be served better by giving greater latitude to awarding authorities, allowing for the possibility that negotiation such as occurred here may save funds for the taxpayers of the Commonwealth. Moreover, an aggrieved subbidder could seek immediate relief directly against anyone whose conduct was unlawful. See, e.g., G. L. c. 93A, §§ 2, 3, and 11.

If the Legislature wishes to proscribe an arrangement such as was made between Limbach and Westcott, in order to enhance the integrity of the subbidding process, it may do so. I find no indication that it has done so under existing legislation. I would affirm the decree.