AMERICAN AIRLINES, INC., Petitioner,
and
Allied Pilots Association, Intervenor-Petitioner,
v.
CIVIL AERONAUTICS BOARD, Respondent,
and
Master Executive Council of the Pilots of Trans Caribbean Airways, Intervenor-Respondent.
No. 1083, Docket 71–1610.
United States Court of Appeals, Second Circuit.
Argued July 14, 1971.
Decided July 23, 1971.

Joseph Barbash, Debevoise, Plimpton, Lyons & Gates, New York City (Gene E. Overbeck, New York City, of counsel), for petitioner.

Martin C. Seham, Surrey, Karasik, Greene & Seham, New York City (Fred C. Klein, New York City, of counsel), for intervenor-petitioner.

O. D. Ozment, Deputy Gen. Counsel (Richard W. McLaren, Asst. Atty. Gen., Howard E. Shapiro, Atty., Dept. of Justice, R. Tenney Johnson, Gen. Counsel, Warren L. Sharfman, Associate Gen. Counsel, Litigation and Research, Robert L. Toomey and Alan R. Demby, Attys., C.A.B., of counsel), for respondent.

Ronald B. Natalie, Verner, Liipfert, Bernhard & McPherson, Washington, D. C. (James M. Verner, John H. Wanner, Harry C. McPherson, Washington,

D. C., of counsel), for intervenor-respondent.

Before FRIENDLY, Chief Judge, and LUMBARD and OAKES, Circuit Judges.

FRIENDLY, Chief Judge:

Every airline merger presents difficult human and financial problems of the relative privileges of the employees of the two carriers. Knowing that such problems would arise in the merger of Trans Caribbean Airways, Inc., (TCA) into American Airlines, Inc., which, indeed, had already been aired at the hearings, the Civil Aeronautics Board in its order of approval, effective December 31, 1970, announced that it would impose the labor protective provisions adopted in the United-Capital Merger Case, 33 CAB 307 (1961), which it had uniformly applied in every subsequent merger and route transfer case. Among these conditions, 33 CAB at 342–47, were the following:

> Section 3. Insofar as the merger affects the seniority rights of the carriers' employees, provisions shall be made for the integration of seniority lists in a fair and equitable manner, including, where applicable, agreement through collective bargaining between the carriers and the representatives of the employees affected. In the event of failure to agree, the dispute may be submitted by either party for adjustment in accordance with section 13.

> \* \* \* \* \* \*

> Section 13. In the event that any dispute or controversy (except as to matters arising under sec. 9) arises with respect to the protection provided herein, which cannot be settled by the carrier and the employee, or his authorized representative, within 30 days after the controversy arises, it may be referred, by either party, to an arbitration committee for consideration and determination, the formation of which committee, its

duties, procedure, expenses, etc., shall be agreed upon by the carriers and the employees, or the duly authorized representatives of the employees.

The merger was consummated on March 8, 1971.

Prior to that date the Master Executive Council of the pilots of TCA (TCA-MEC) filed a petition asking the Board to direct American, Allied Pilots Association (APA) (the bargaining agent for American's pilots), and itself to submit the integration of the pilot seniority list to final and binding arbitration. Answers were filed by American, APA, and the Flight Engineers International Association (FEIA) representing American's flight engineers.[1] Later submissions revealed that on February 4, 1971, American and APA had entered into a memorandum of understanding on seniority list integration, which provided for signature on behalf of the TCA pilots but had not been signed by them. The TCA pilots considered unacceptable certain aspects of the proposed integration of the pilots still in service on a date-of-hire basis and, even more so, a provision with respect to the recall of furloughed pilots on the basis of "last furloughed, first recalled." TCA-MEC claimed that the practical effect of the latter provision would be that all American's pilots furloughed as of the date of the merger would be recalled before any of TCA's furloughed pilots. It contended also that the proposed method of integration was simply an adoption by American of proposals made by APA and that the latter had "resolutely refused to adopt any procedures leading to a fixed period of negotiation, to be followed by arbitration failing a negotiated settlement." APA and American opposed the petition, asserting that integration had already been accomplished "on a fair and equitable basis." In an order dated May 7, 1971, the Board noted its "long standing policy" that matters encompassed

1. The International Brotherhood of Teamsters also submitted a pleading in support of Board action to ensure the propriety of seniority integration procedures.

in labor protective conditions of a merger "should be resolved by voluntary agreement between the carrier and the labor groups or employees involved, or, failing agreement, by arbitration"; judicial recognition "that the Board lacks expertise in labor matters and that seniority is basically a matter for negotiation or arbitration," see Outland v. CAB, 109 U.S.App.D.C. 90, 284 F.2d 224, 228 (1960) (Burger, J.); and other judicial statements that, under the Interstate Commerce Commission's labor protective provisions similar to those here imposed, either party has "'the absolute right to select arbitration as a means for settling the dispute and when such selection [is] made then arbitration [is] mandatory upon the other party,'" quoting from New Orleans & N. E. Ry. v. Bozeman, 312 F.2d 264, 267 (5 Cir. 1963); Brotherhood of Locomotive Engineers v. Chicago & Nw. Ry., 314 F.2d 424, 433 (8 Cir.), cert. denied, 375 U.S. 819, 84 S.Ct. 55, 11 L.Ed.2d 53 (1963). Accordingly, it directed "[t]hat American shall within 30 days submit all pending disputes with respect to the seniority list integration of the American and TCA pilots and flight engineers to a neutral arbitrator or committee of arbitrators."

On May 28, 1971, American filed with the Board a petition for reconsideration. It annexed to this a letter from APA advising American of the union's position that no arbitration could change or vary the agreements already reached between American and APA and asking American to "[b]e assured that the pilots in the employ of American Airlines, as represented by the Allied Pilots Association, will use every means available to protect and insure the Company's compliance with our Collective Bargaining Agreement." Pointing to the dangers of labor strife implicit in the APA letter and alleging various difficulties in proceeding with the arbitration in the face of APA's announced refusal to participate, American asked that the Board "appoint a hearing examiner to determine whether the Memorandum of Understanding dated February 4, 1971 between American and the Allied Pilots Association provides a fair and equitable method of seniority integration and, if not, to prescribe the manner in which disputes concerning the method of integration should be resolved." In support of this proposal, it cited the Board's attempt to resolve a seniority dispute by itself establishing a list in the North Atlantic Route Transfer Case, 12 CAB 422 (1951), aff'd sub nom. Kent v. CAB, 204 F.2d 263 (2 Cir.), cert. denied, 346 U.S. 826, 74 S.Ct. 46, 98 L.Ed. 351 (1953).

TCA-MEC responded that while it saw no reason justifying reconsideration, "as still another good faith effort at accommodating the dispute, it had no objection to the appointment of a hearing examiner for the same purpose as in the *Kent* case—namely, the creation of an integrated seniority list." On the other hand, it vigorously objected to proceeding as American had proposed, namely, first considering whether the arrangement already worked out between American and APA was fair and equitable and, if and only to the extent that this was decided in the negative, prescribing still further procedures for resolving remaining issues.

APA also filed an answer which was labeled as in "support" of American's petition for reconsideration. It conceded the Board's power to determine whether the existing arrangement was "fair and equitable," but challenged the Board's authority to permit an arbitrator to order a departure from an agreement between a surviving carrier and the collective bargaining representative of its employees, and was conspicuously silent on whether the Board itself could do this—as distinguished from merely directing the dominant carrier and its union to try again.

On June 11, 1971, the Board denied reconsideration. It reiterated that it did "not consider it appropriate to entertain this dispute beyond directing compliance with the labor protective conditions imposed as a condition to our ap-

proval of the merger." It found "no basis for assuming that the legal effect of an integration of the seniority lists by arbitration would be any different from that which would result from integration by the Board after what would undoubtedly be protracted evidentiary and other proceedings." Further, while the Board expressed the "hope" that APA would take part in the arbitration proceeding, it concluded that "[i]f [APA] chooses not to do so, and the decision of the arbitral tribunal should be considered by it to be adverse to its interests, it would have no basis for complaint." Also, it rejected American's claims with respect to the difficulties of the arbitration, and emphasized that the question was not whether the American-APA plan fell within the range of what was "fair and equitable" but rather, since full agreement had not been reached, what plan of integration the arbitral tribunal determined to be most appropriate. It directed American to proceed to arbitration within ten days. American promptly filed this petition to review. Upon its representation that the Board was steering a collision course which entailed a serious risk of a strike on a major air carrier, we granted a stay, conditioned on an expedited appeal —a procedure which we are being compelled to employ with alarming frequency.[2]

At first blush it would seem indeed, as it did to the panel that granted the stay, that for an administrative agency to decline to follow a procedure, admittedly fair and within its power, which was affirmatively urged by a carrier, reluctantly acquiesced in by the labor organization that might have been expected to object, and not opposed by its rival, was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2) (A). However, that would be too much of a keyhole view. Congress has vested the Board with the power to approve airline mergers "upon such terms and conditions as it shall find to be just and reasonable * * *." 49 U.S.C. § 1378 (b). The broad scope of a similar provision in the Interstate Commerce Act was recognized by the Supreme Court many years ago. United States v. Lowden, 308 U.S. 225, 60 S.Ct. 248, 84 L.Ed. 208 (1939). If the Board's experience convinced it that the integration of seniority lists of employees of merging carriers was a function which it was not well suited to perform and which, in the absence of agreement, had best be left to arbitration, that was a judgment it was competent to make. The Board, like other agencies, operates on a limited budget, both of money and of time; it may properly decide that these scarce resources should be husbanded for the tasks for which it considers itself to be expert, rather than frittered away in an area more suitable for an experienced labor arbitrator. It is no matter that the policy announced in the *United-Capital* case represented a change from the course pursued in the *North Atlantic Route Transfer* case. As Judge Prettyman so wisely said, an agency's "view of what is best in the public interest may change from time to time. Commissions themselves change, underlying philosophies differ, and experience often dictates changes." Pinellas Broadcasting Co. v. FCC, 97 U.S.App.D.C. 236, 230 F.2d 204, 206 (D.C. Cir.), cert. denied, 350 U.S. 1007, 76 S.Ct. 650, 100 L.Ed. 869 (1956). It is far too late after the many decisions, including the two cited by the Board, that have recognized the validity of arbitrators' decisions on seniority issues under the standard protective provi-

---

2. In many such cases, although not in this one, the briefs on such expedited appeals are inadequate. And the need for speedy decision tends against the "ample time and freshness of mind for private study and reflection in preparation for discus-

sion" and the writing of helpful opinions, about which Mr. Justice Frankfurter spoke so eloquently in his dissent in Dick v. New York Life Ins. Co., 359 U.S. 437, 458–59, 79 S.Ct. 921, 3 L.Ed.2d 935 (1959).

sions imposed both by the Board and by the I.C.C., to argue successfully that prescribing an arbitration procedure for integrating seniority lists if negotiation fails is a delegation outlawed by 5 U.S.C. § 555(b). In any event, the time for challenging the legality of that provision in the order of December 31, 1970, had expired before the filing of this action. 49 U.S.C. § 1486(a).

■■■ Once the Board had made the determination that arbitration was the appropriate method of integrating seniority lists in cases in which the parties could not reach an agreement by negotiation, it was for it to decide, within the range of reason, whether the circumstances of this case dictated an exception to the general rule. Surely it was not irrational for the Board to rule that the dissatisfaction of and threats by an intransigent union and the acquiescence of a fearful employer were not a sufficient ground. To yield in one such case would be to invite repetition and thereby undermine a policy the Board had a right to establish. Moreover, we agree with the Board that American's fears with respect to the conduct of the arbitration are exaggerated. The airline refers to the difficulties it will have in finding an arbitrator when one of the most important parties refuses—or at least says it will refuse—to participate in the selection. The Board answers that the National Mediation Board, whose duties under the Railway Labor Act have made it familiar with airline labor disputes, can supply one whose fairness and qualifications could hardly be challenged.[3] American claims to be worried over the lack of standards the arbitrator is to follow. He must apply the same standard, "the integration of seniority lists in a fair and equitable manner," by which an examiner of the Board would be bound.

American professes concern with respect to the number of employee groups the arbitrator may have to hear; the same problem would occur before a hearing examiner. The contention that the arbitrator cannot lawfully alter the contract between American and APA is answered by what Judge Chase wrote for this court in *Kent, supra,* 204 F.2d at 266:

> A private contract must yield to the paramount power of the Board to perform its duties under the statute creating it to approve mergers and transfers of certificates, such as are here involved, only upon such terms as it determines to be just and reasonable in the public interest.

What the Board can do, an arbitrator appointed pursuant to its order can likewise do.

■ American's real fear is that, despite all this, APA will refuse to recognize the decision of an arbitrator which it does not like. But APA could do this only at serious peril. Paragraph 5 of the Board's order of May 7, 1971, prescribes

> [t]hat the determination of the arbitral tribunal shall be final and binding upon all pilots and flight engineers of American Airlines as to which there exists a dispute with respect to seniority list integration, which has been the subject of the arbitration provisions provided for herein.

Refusal by APA to abide by the arbitral determination, in this case unless it has been challenged on a recognized ground, cf. 9 U.S.C. § 10, would be as much a contempt as refusal to abide by an integration of the seniority lists made by the Board itself. As already indicated, the Board has broad powers under 49 U.S.C. 1378(b) to deal with labor relation prob-

---

3. APA's statement at argument that the country possesses only one labor arbitrator competent to integrate airline seniority lists and that APA cannot accept him because of his relations with the Air Line Pilots Association—of which it be-

lieves TCA–MEC to be a sub-division—verges on the absurd. While we entertain the highest respect for this gentleman, we are sure he would be the last to make any such assertion of indispensability.

lems growing out of airline mergers. See Kent v. CAB, *supra*. No argument has been made to us that suggests that while the Board has power to order arbitration of unresolved seniority lists integration questions, it cannot bind *all* relevant parties by the determination of the arbitral tribunal. To say that the Board could direct an arbitral resolution but not make that resolution binding on all concerned parties would leave the Board with powers that would be more apparent than real. However, we need not here depend on so general a principle, for APA—as well as all other concerned parties—took an active part in the proceedings which resulted in the issuance of the Board's order of May 7, 1971. As said in the ALI Restatement of Judgments, § 79, p. 356 (1942), "A person who intervenes as a contestant in a proceeding is a party to the judgment whether or not the court originally had jurisdiction over him, provided that before the judgment is finally rendered he appears as a party." Cf. Rudolph v. City Manager of Cambridge, 341 Mass. 31, 167 N.E.2d 151, 157 (1960). The same principle applies to one who has become a party to a proceeding before an administrative agency. Cf. Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 401–04, 60 S.Ct. 907, 84 L.Ed. 1263 (1940); United States v. Utah Construction & Mining Co., 384 U.S. 394, 421–22, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966); Safir v. Gibson, 432 F.2d 137, 142–43 (2 Cir.), cert. denied, 400 U.S. 850, 942, 91 S.Ct. 241, 27 L.Ed.2d 246 (1970). The mere possibility of unlawful conduct by APA is surely not enough to make the Board's adherence to its established policy "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2) (A).

The petitions for review are denied. The stay will be vacated on a date five days after the entry of this opinion.